SETH SPRING AND OTHERS, PLAINTIFFS IN ERROR v. THE
EXECUTORS OF WILLIAM GRAY, DEFENDANTS IN ERROR.

The master of a ship, who with the other members of a mercantile house were
owners of the vessel which he commanded, with the approbation of the firm,
signed a bill of lading to deliver certain articles of merchandize, the property of
the shipper, at the port of destination of the vessel, " freight to be paid for the
goods as per agreement indorsed." The agreement indorsed was, that the owners
of the ship should have, as the freight of the ship, one half of the net profits on
the proceeds of the goods, which were to be invested in a return cargo, to be
consigned to and sold by the shipper. The proceeds of the outward cargo
were received by the shipper, part in goods, and part in money; a portion of
the cargo having been left unsold by the vessel where they were delivered.
The transaction was made the subject of an account current by the owners of
the vessel with the shipper of the goods, and a large balance was claimed to
be due to them on the said account. The shipment was made in May 1810,
and in May 1829, a suit was instituted for the recovery of the balance, stated
to be due on an account current. The defendants, the executors of the
shipper, pleaded the statute of limitations of the state of Maine. The defend-
ants replied, that the accounts and promises arose " from such accounts as
concern the trade of merchandise between merchant and merchant, their fac-
tors and servants." The plaintiffs admitted they had no other cause of action
than such as arose from the bill of lading, and the contract indorsed thereon.
Held, that the bill of lading and the contract were not sufficient to maintain
the issue joined on the part of the plaintiffs in respect to the replication of mer-
chants' accounts.

The statute of limitations of Maine is copied from the 21st of James I., and its
words are, " all actions of account and upon the case, other than such ac-
counts as concern the trade of merchandise, between merchant and merchant,
their factors or servants, &c. shall be commenced." It would seem to be the
necessary construction of these words that the action on the case to which the
exception applies, must be founded on an account. The language of the act
conveys the same meaning as if it had been " all actions of account, and all
actions on the case, other than such as are founded on such accounts as con-
cern the trade of merchandise," &c. The foundation of the action must be
an account, not a contract.

From the association of actions on the case, a remedy given by the law for al-
most every claim for money, and for the redress of every breach of contract
not under seal, with actions of account, which lie only in a few special cases;
it may reasonably be conceived that the legislature had in contemplation to
except those articles only for which account would lie. The words certainly
imply that the action should be founded on an account. The account must
be one which concerns the trade of merchandise.

The case presented by the exception is not every transaction between merchant
and merchant; not every account which might exist between them; but it
must concern the trade of merchandise. It is not an exemption from the act,
attached to the merchant, merely as a personal privilege; but an exemption
which is conferred on the business as well as on the persons between whom
that business is carried on. The accounts must concern the trade of merchan-

[Spring and others v. The Executors of Gray.]

dise; and the trade must be, not an ordinary traffic between a merchant and any ordinary customer, but between merchant and merchant.

The " trade of merchandise which can present an account protected by the exception, must be not only between merchant and merchant, but between the plaintiff and defendant. The account—the business of merchandize which produces it, must be between them.

A charter party, a contract by which the owner lets his vessel to another for freight, does not change its character because the parties happen to be merchants. It is still a special contract, whereby a compensation is stipulated for a service to be performed; and not an " account concerning the trade of merchandize." It is no more " an account," and no more connected with " the trade of merchandise" than a bill of exchange, or contract for the rent of a house or hire of a carriage, or other single transaction which might take place between individuals who happen to be merchants. An entry of it in the books of either could not change its nature, and convert it from an insulated transaction between individuals into an account concerning the trade of merchandize between merchant and merchant. They must depend on the nature and character of the transaction, not on the books in which either party may choose to enter a memorandum or statement of it.

The English cases certainly do not oppose the construction given by the court to the words of the statute: the American cases, as far as they go, are in favour of it.

On a commercial question especially, or one deeply interesting to merchants, and to merchants only; the settled law of New York is entitled to great respect.

ERROR to the circuit court of the United States for the district of Maine.

This action was originally instituted in March 1829, by the plaintiffs in error, who survived Andrew M. Spring, their copartner, in the court of common pleas of the county of York, in the state of Maine, by process of attachment; and was removed to the circuit court of the United States, upon the petition of the defendants.

The action was assumpsit; and in the declaration the first count was for the balance of an account current, which account was annexed to the writ. The second count was for money had and received.

The defendants pleaded the general issue, which was joined; and also the statute of limitations. The plaintiffs, to their pleas of the statute, replied that " the accounts and promises arose from such accounts as concern the trade of merchandise between merchant and merchant, their factors and servants;" and issue was taken on the replication.

The declaration described the plaintiffs as copartners on the 1st day of July 1821, "transacting business as merchants in the name of Seth Spring and Company." The defendants' intestate was described as " William Gray, late of Boston, deceased."

The account annexed to the writ was as follows:

[Spring and others v. The Executors of Gray.]

William Gray, Esq., of Boston, Mass., in account with Seth Spring & Sons.

| Dr. | | | Cr. | |
|---|---|---|---|---|
| 1810. Sept. | For loss sustained on the sloop Fanny, Capt. Ebenezer Jordan, master, which said Gray insured - | 2,500 00 | 1811. By amount of the outward cargo of the barque Morning Star, as per original invoice and bills of lading - | 35,202 83 |
| 1811. Oct. | For 35,000 gals. olive oil, in casks, delivered from barque Morning Star, Wm. Nason, master, in Boston, at $1 25 per gal. | 43,750 00 | By his half the profits of said Morning Star's voyage | 14,469 03 |
| | For 127 cases do. delivered by same | 1,270 00 | By balance now due from estate of said William Gray | 34,477 45 |
| | For 53,803 lbs. cotton left with Mr Lear in Algiers, and afterwards paid for by the Dey of Algiers to Com. Stephen Decatur, and received by said Gray, 30 cents per lb. | 16,140 90 | | |
| | For cash paid by Andrew M. Spring to Bainbridge & Brown, merchants, England, and by them placed to credit of William Gray | 2,000 00 | | |
| | For cash paid Andrew M. Spring's commissions, 2½ per cent, on said barque's outward cargo, as per agreement | 880 00 | | |
| 1829. | For interest, on loss on Fanny 19 years | 2,850 00 | | |
| | For interest on one half the profits of Morning Star's voyage, as per agreement | 14,758 41 | | |

VOL. VI.—U

JOHN MUSSEY, Clerk.

This account grew out of a special contract between the parties; and the evidence and instructions of the court to the jury were set forth in a bill of exceptions; which stated that the plaintiffs, to maintain the issues on their part, offered in evidence and read to the jury:

A bill of lading of the outward cargo of the Morning Star, signed by Andrew M. Spring, with the amount or contract on the back of it, signed by William Gray and Seth Spring and Sons. The bill of lading was in the usual form, and stipulated that the cargo should be delivered at Algiers, to Andrew M. Spring, the freight to be paid as per agreement indorsed on the same. The agreement was as follows:

The proceeds of the within cargo, amounting to thirty-five thousand two hundred and two dollars eighty-three cents, as per invoice, costs and charges, is to be invested in Algiers or some other port (after deducting all charges, consignee's commission included, except freight and premium of insurance within, of which two last mentioned charges are to be made on the goods), and returned in the said barque Morning Star to Boston, when Seth Spring and Sons (owners of said barque) are to recover one half of the net profits thereon, in lieu of freight and primage, the voyage round. The consignee's commissions to be two and a half per cent on the sales of the within cargo; and no commissions to be charged in Boston except what is paid an auctioneer.

SETH SPRING AND SONS,<br>WILLIAM GRAY.

$35,202 83.

Also letters of instructions addressed by William Gray to Andrew M. Spring, relative to the voyage of the Morning Star; and also the correspondence on the accounts of Andrew M. Spring, and of the consignees and others relative to the transaction. The plaintiffs' counsel having closed their evidence, they were inquired of by the court whether they had any other cause of action than such as arose from the bill of lading of the outward cargo of the barque Morning Star, and the contract indorsed thereon; answered that they had not.

And thereupon the defendants' counsel moved the court to instruct the jury, that inasmuch as the plaintiffs had admitted that their whole cause of action arose from said bill of lading

and contract indorsed thereon; the said bill of lading, and contract, with the other papers, documents, and testimony aforesaid, were not sufficient evidence, in point of law, to maintain the issue joined on the part of the plaintiffs in respect to their replication of merchants' accounts.

The plaintiffs' counsel objected to such instructions, and prayed the court to instruct the jury, that the evidence introduced was sufficient to prove, and did prove, the issue last aforesaid on the part of the plaintiffs.

But the court instructed the jury that inasmuch as the plaintiffs had admitted that their whole cause of action arose from said last mentioned bill of lading, and contract indorsed thereon; the said bill of lading and contract, with the other papers, documents, and testimony aforesaid, were not sufficient evidence, in point of law, to maintain the issue last aforesaid on the part of the plaintiffs.

And thereupon the jury returned their verdict for the defendants on this issue; and upon the general issue, they found no verdict.

The court gave a judgment for the defendants; and the plaintiffs prosecuted this writ of error.

The case was argued by Mr Evans for the plaintiffs; and by Mr Webster for the defendants.

The plaintiffs contended, 1. That the question whether the accounts in suit were such as concerned the trade of merchandise, was a question for the jury solely; which they should have been at liberty to consider. And, 2. That the accounts in suit are within the exception of the statute.

For the plaintiffs, it was argued, by Mr Evans, that the direction of the court to return a verdict for the defendants was erroneous; as the question whether the accounts between the plaintiffs and the defendants' testator were, or were not, "merchants' accounts" was one of fact and not of law; and therefore proper for the jury exclusively. Bass v. Bass, 8 Pickering, 187.

The main question in the case is, whether the account and the agreement, taken together, do not amount to an account between merchant and merchant, within the exception in the statute of limitations of merchants' accounts.

An exception always operates to take a case which comes

within it, out of the operation of the enacting clause; and whatever is within the exception is exempted from the effects of the law.

The exemption of merchants' accounts has reference to the character of the parties; and not to the nature of their dealing, or the subject matter of the account between them. The account on which this action is founded, is fully within this principle.

The statute of limitations has sustained various fortunes since its enactment. The dispositions of courts towards its objects have differed, and have frequently changed; and the cases in which it has been permitted to operate, have been diminished or increased, according to the opinion entertained of the policy of the system. At the present period the course of decisions is to restore the law to its full force; and to give all its provisions their full influence. The exception of merchants' accounts is in clear and express terms; and if relieved from the pressure of decided cases, there would be no difficulty in its application to the case before the court. The accounts between the parties, or at least the plaintiffs' account, is one growing out of dealings between them and the defendants' intestate, of a mercantile nature. It has reference to the transportation of merchandise, its sale, and to the reinvestment of the proceeds. The account is not yet closed.

Without going back to the history and progress of the various conflicts which this exception has sustained, it may be proper to state, that in the first instance it was limited to actions of account. At length it was extended to every form of proceeding at law or in equity, where accounts were sought to be recovered; various other questions succeeded, some of which, having a bearing upon that now before the court, are still debatable.

The question how far the exception applies to closed or stated accounts; or whether only to those which are open or current? Is it required that some one item shall be within six years?

Several cases maintain the last ground; they are chiefly from the courts of chancery. 2 Ves. 400; 6 Ves. 580; 15 Ves. 199; 19 Ves. 148, 180; 15 Ves. 286; Gilb. Eq. Rep. 224; Bunbury, 217; 5 Johns. Ch. Cases, 522; 2 Eden, 169. There

is nothing in the language of the exception to authorise the construction adopted in these cases. Merchants' accounts are excepted, without any limitation as to the period of the items which compose them, or as to the date of the first or last of those items.

On the other hand, there are decisions which maintain the exception, and give it operation; although there is no item in the account within six years. 6 Term Rep. 119; 2 Saunders, 127, 12, 6, 7; 6 Pick. 362; 2 Dall. 264; 2 Yeates, 105; 4 Greenl. 339; 5 Cranch, 15; 3 Wilson, 94.

Thus between the common law decisions and those by the courts of chancery, the exception is entirely annihilated. Both cannot be law: and by some of the authorities, merchants' accounts are no more favoured than other accounts, against the plain intent of the statute.

It is admitted that *closed* or *stated* accounts are not within the exception. The cases to this principle are, 2 Saunders, 124; 2 Johns. Rep. 200; 20 Johns. Rep. 533.

Another question was discussed in the circuit court, which may have its influence in this court. How far accounts, to entitle them to the protection of the exception, should be mutual? It is said accounts must exist on both sides. The doctrine of mutuality of accounts is found in Bul. N. P. 149; 20 Johns. 583.

This doctrine has been engrafted, very strangely, on the exception under consideration. An accurate examination of the authorities will satisfy the court, that to uphold this exception mutuality is not requisite. The words of the law are not accounts " between merchant and merchant," but " trade between merchant and merchant." And the case before the court shows mutual accounts. The transactions to which the account refers, are those of mutual dealing, requiring that accounts should have been kept, and that the results of those dealings should be stated in that form. The books of the plaintiffs show an account, and so do the books of the defendants' testator—not with the plaintiffs in their name, but of the business in which they were concerned, and in the profits in which both parties were interested. It is said, however, that there was in these transactions nothing but a contract—no trade—no merchandize.

The parties were merchants. The subject of their transactions was merchandise: and it was to be transported to a foreign place, to be sold there; the proceeds to purchase other merchandise, which was to be brought back to be sold here; and after the original cost of the merchandise should be repaid, the residue was to be divided between the parties. In all this accounts were required. Do they not concern the trade of merchandise?

Does the agreement alter the nature of these transactions? In every trade there is an agreement, written or otherwise: as to factors it is generally a written contract; and this case may well be considered as one between merchant and factor. The contract was made with the partnership, and they appointed one of themselves to see it executed. In doing this, the person appointed acts under the agreement, and the advantages which accrue to him, accrue to the plaintiffs. It was, without doubt, one of the inducements to the contract, that a partner of the firm should execute it. Courts look at the substance of agreements, not to the mere form. The bill of lading must necessarily have been signed by the master of the Morning Star. It would have been so signed, if they had appointed any other person to execute the agreement. The instructions of the shipper were for the same reason addressed to him.

The whole transaction is but one contract; and the signature of the bill of lading by the master did not separate him from his co-partners. He became the agent of the firm to keep the accounts for them; and these accounts so kept were the accounts of all the partners.

Mr Webster, contra.

The case is one of contract, depending on a special agreement between the owners of the Morning Star, and the shippers of the cargo. The vessel was to carry the property shipped for a proportion of the profits on the sales; and there were no profits. The whole transaction is contained in the bill of lading and the agreement, and the account is a bill of particulars growing out of the agreement.

The plaintiffs, on being called upon, stated that their demand was founded entirely on the agreement.

It is said that the question was one of fact, and not of law;

and that it was not properly taken from the jury by the court. Had this been so, yet as on the trial neither party requested the facts to be left to the jury, &c. and both were willing to consider the whole as matter of law; the objection is now out of place.

[Mr Justice Story stated, that at the trial neither party requested the facts to be left to the jury.]

But it is contended that this is purely a question of law. The counsel for the plaintiffs in error have so treated it by a reference to numerous cases. All the facts are admitted—the contract, and all the matters given or offered in evidence, are in writing; and they give rise to the only questions, which are legal ones, as to the construction of this written evidence. It is denied that the case in Pickering's Reports applies; there many facts were controverted.

This is not a matter of account within the exception of the statute of limitations.

There is no item within six years; and this is necessary, although the case in Cranch is considered as giving a sanction to another principle. In some of the states, it has been held that it is necessary that the account should have an item within the limitation, but not in all. All the English decisions are otherwise. But the principle is not material in this case.

The account must be current; existing on a running mutual account between merchants: it must be an open, and not a settled transaction. The statute has no relation to written books; the words apply to such a state of things as will require a party to account; and as are analogous to trusts. The relations between the parties determine the nature of the cases. The mere fact that there is an account between the parties, is not sufficient. An account settled and stated, it is allowed, is not within the statute, and the reason is, that the matters of the account are no longer open, and the account has become a debt.

The evidence to maintain the action shows no matter of account. The consignee was bound to account, but the ship owners, who signed the agreement, had no accounts to keep. The consignee was not bailiff and receiver; and the old action of account would not lie.

The case does not exhibit any thing from which a claim to account could be made upon the defendants' testator.    He had received nothing.    The manner of paying the freight did not make the transaction one of account: it was the same as a charter party of affreightment, and was a special agreement for a special purpose.    It is not enough that a party is liable to pay money; to make it an account, he must have received something for which he is liable to account.    Carthew, 226.

There must be mutual accounts; debts and credits on both sides; mutual dealings: a debt or claim on one side, could not be an account, in the view of the exception.

The ground on which the exception rests is, that the merchant looks to remittances, and a course of dealing between the parties at a distance, and the law regards the inconvenience of having settlements made within a short time.    Some transactions between merchants are not, and cannot be closed within the period of six years; and for such cases the law intends to provide.    Accounts between merchants are often kept open for a long time, in the expectation of remittances.

The statute must have a full and reasonable construction. The account, to bring it within the exception, must relate to the trade of merchandise.    The pleadings in this case exhibit the question in this form; but in this case there are no such relations.    The cargo is placed in the hands of the captain for certain purposes only.

Because the parties are merchants, and the goods shipped by the defendant's testator were articles of merchandise, there is no application of the law.    The demand must be one in a transaction, which being between merchant and merchant, the party called upon is bound to account.

Mr Chief Justice MARSHALL delivered the opinion of the Court.

This cause depends entirely on the question whether the plaintiffs are within the exception of the statute of limitations, made in favour of " such accounts as concern the trade of merchandise between merchant and merchant."

The plaintiffs in error brought an action on the case against the defendants, in the proper court of the state of Maine,

which was removed by the defendants into the circuit court of the United States for the district of Maine.

The first count was for balance of accounts annexed to the writ; the second was for money had and received. The defendants pleaded non-assumpsit and the statute of limitations. Issue was joined on the first plea. To the second, the plaintiffs replied that the accounts and promises mentioned in the declaration are, and arose from such accounts as concern the trade of merchandise between merchant and merchant, their factors and servants; and issue was joined on this replication.

At the trial the plaintiffs produced the bill of lading of the outward cargo of the barque Morning Star, signed by Andrew M. Spring, the master of said barque, with the contract on the back of it, signed by William Gray, the testator of the defendants, and by Seth Spring and Sons, the plaintiffs and owners of the barque Morning Star; which bill of lading and contract are in these words:

Shipped in good order and well conditioned, by William Gray of Boston, a native citizen of the United States of America, for his sole account and risk, in and upon the barque called the Morning Star, whereof is master for this present voyage, Andrew M. Spring, now in the harbour of Boston, and bound for Algiers; to say: [The merchandize is here described by marks, numbers and quantities]; being marked and numbered as in the margin, and are to be delivered in like good order and well conditioned at the aforesaid port of Algiers, (the dangers of the seas only excepted), unto Andrew M. Spring, or to his assigns, he or they paying freight for the said goods, as per agreement indorsed hereon, without primage or average. In witness whereof, the said master of the said barque hath affirmed to four bills of lading of this tenor and date, one of which being accomplished, the other three then to stand void. Dated in Boston, May 26, 1810.

ANDREW M. SPRING.

The proceeds of the within cargo, amounting to thirty-five thousand two hundred and two dollars eighty-three cents, as per invoice, costs and charges, is to be invested in Algiers or some other port (after deducting all charges, consignee's commission included, except freight and premium of insurance within, of which two last mentioned charges are to be made

[Spring and others v. The Executors of Gray.]

on the goods), and returned in the said barque Morning Star to Boston, when Seth Spring and Sons (owners of said barque) are to recover one half of the net profits thereon, in lieu of freight and primage, the voyage round. The consignee's commissions to be two and a half per cent on the sales of the within cargo; and no commissions to be charged in Boston except what is paid an auctioneer.

SETH SPRING & SONS,
WILLIAM GRAY.

$35,202 83.

The plaintiffs also produced several letters and papers from William Gray, the master of the Morning Star, and others, respecting the outward voyage of the barque; together with the bills of lading and invoices of her inward cargo, which was delivered to the defendants. They also produced an account from the books of Seth Spring and Sons, as follows:

*Dr. William Gray, Esq., of Boston, Mass., in account with Seth Spring and Sons.* Cr.

| | | | | | |
|---|---|---|---|---|---|
| 1810, Sept.   For loss sustained on the sloop Fanny, captain Ebenezer Jordan, master, which said Gray insured | 2,500 | 00 | 1811.   By amount of the outward cargo of the barque Morning Star, as per original invoice and bill of lading | 35,202 | 83 |
| 1811, Oct.   For 35,000 gallons oil in casks delivered him from barque Morning Star, William Nason, master, at Boston, at 7s. 6d. per gal. | 43,750 | 00 | His half the profits of said Morning Star's voyage | 14,469 | 03 |
| 127 cases oil delivered by same, at $10 per case | 1,270 | 00 | 1829.   Balance now due from estate of said William Gray. | 34,477 | 45 |
| 53,803 lbs. cotton left with Mr Lear, and afterwards paid for by the Dey of Algiers to Com. Stephen Decatur, at 30 cents per lb. | 16,140 | 90 | | | |
| Cash paid by A. M. Spring to Bainbridge & Co. merchants, England, and by them passed to the credit of said Gray | 2,000 | 00 | | | |
| Paid A. M. Spring his commissions, at 2½ per cent on said barque's outward cargo as per agreement | 880 | 00 | | | |
| 1829.   Interest on loss on sloop Fanny 19 years | 2,850 | 00 | | | |
| Interest on one half the profits of Morning Star's voyage, per agreement | 14,758 | 41 | | | |

When the plaintiffs had closed their evidence, the court asked whether they had any other cause of action than such as arose from the bill of lading of the outward cargo of the barque

Morning Star, and the contract indorsed thereon; and they answered that they had not.

The counsel for the defendants then moved the court to instruct the jury that inasmuch as the plaintiffs had admitted that their whole cause of action arose from said bill of lading and contract indorsed thereon, the said bill of lading and contract, with the other papers, documents and testimony aforesaid, were not sufficient evidence in point of law to maintain the issue joined on the part of the plaintiffs, in respect to their replication of merchants' accounts.

The plaintiffs' counsel objected to such instructions, and prayed the court to instruct the jury that the evidence introduced was sufficient to prove, and did prove, the issue joined on the part of the plaintiffs.

The court instructed the jury that inasmuch as the plaintiffs had admitted that their whole cause of action arose from said last mentioned bill of lading and contract indorsed thereon, the said bill of lading and contract, with the other papers, documents and testimony aforesaid, were not sufficient evidence in point of law to maintain the issue last aforesaid on the part of the plaintiffs. To this instruction an exception was taken.

A verdict was found for the defendants; and this writ of error brings up the judgment which was rendered thereon.

The statute of Maine is copied from the 20th of James I., and its words are, "all actions of account and upon the case, other than such accounts as concern the trade of merchandise between merchant and merchant, their factors or servants, &c. shall be commenced," &c.

It would seem to be the necessary construction of these words, that the actions on the case to which the exception applies, must be founded on an account. The language of the act conveys the same meaning as if it had been "all actions of account, and all actions on the case, other than such as are founded on such account as concerns the trade of merchandise," &c. The foundation of the action must be an account, not a contract.

From the association of actions on the case, a remedy given by the law for almost every claim for money, and for the redress of every breach of contract not under seal, with actions

of account, which lie only in a few special cases; it may reasonably be conceived that the legislature had in contemplation to except those actions only for which account would lie. Be this as it may, the words certainly require that the action should be founded on an account. The account must be one " which concerns the trade of merchandise." The case protected by the exception is not every transaction between merchant and merchant, not every account which might exist between them, but it must concern the trade of merchandise. It is not an exemption from the act, attached to the merchant merely as a personal privilege, but an exemption which is conferred on the business as well as on the persons between whom that business is carried on. The account must concern the trade of merchandise: and this trade must be, not an ordinary traffic between a merchant and any ordinary customers, but between merchant and merchant. This " trade of merchandise," which can furnish an account protected by the exception, must be not only between merchant and merchant, but between the plaintiff and defendant. The account—the business of merchandise which produces it—must be between them.

If these propositions be well founded, and we believe they are, let us apply them to the case.

The defendants were undoubtedly merchants. The plaintiffs, Seth Spring and Sons, were also merchants. But they were likewise ship owners. They were the proprietors of vessels which they hired to others for freight. A charter party, a contract by which the owner lets his vessel to another for freight, does not change its character because the parties happen to be merchants. It is still a special contract, whereby a compensation is stipulated for a service to be performed; and not an *account* concerning *the trade of merchandise.* It is no more " *an account*," and no more connected with " *the trade of merchandise*," than a bill of exchange or a contract for the rent of a house, or the hire of a carriage, or any other single transaction which might take place between individuals who happened to be merchants. An entry of it on the books of either could not change its nature, and convert it from an insulated transaction between individuals, into an account concerning the trade of merchandise, between merchant and merchant. This must depend on the nature and character of the

transaction, not on the book in which either party may choose to enter a memorandum or statement of it.

Had the freight contracted for been a sum in gross, or a sum dependent on the space occupied by the cargo, or on its weight, or on any estimate of its value, it would have been perceived at once to be a claim founded on contract, and not on account.

Is the nature of the transaction, varied by the fact, that the freight to be paid by the charterer, instead of being a specific sum, or a sum to be ascertained by some given rule, is dependent on the profits of the adventure? That the sales of the outward and inward cargo, and all the expenses attendant on the enterprize, must be examined in order to ascertain the amount of freight? This process must undoubtedly be gone through in an action on the contract, but does its necessity convert the action, which ought to be on the contract, into one founded on an account concerning the trade of merchandise between merchant and merchant? The account of the sales of the outward cargo is to be adjusted between the shipper and his consignee, not between the shipper and the ship owner in his adventitious character of a merchant. So the sales of the return cargo must be examined in order to ascertain whether any and how much profit has been made, and whether the ship owner is entitled to any and how much freight. But this account is not founded on trade and merchandise between the owner and affreighter of the vessel. It is founded on the trade of the affreighter alone, to which reference must be made in order to ascertain the amount of freight. Mr Gray could not be considered as the factor of Seth Spring and Sons, selling their goods. He was selling his own; and the relation between them was not that of merchant and factor, but of charterer and charteree of a vessel by special contract.

If we were to decide this case on the words of the statute, we should not think that the plaintiffs had brought themselves within the exception. We should not consider the action as founded on "such an account as concerns the trade of merchandise between merchant and merchant."

This opinion is not changed by cases which are to be found in the books.

In Webber v. Tivil, 2 Saunders, 121, the plaintiff's declaration contained two counts, one in indebitatus assumpsit for

money had and received by the defendant for the plaintiff's use, and for goods, wares and merchandise sold and delivered, and the other on an insimul computasset. To the plea of the act of limitations the plaintiff replied, that the money in the several provisions mentioned became due and payable on trade between the plaintiff and defendant as merchants, and wholly concerned merchandise. The defendant demurred, and the whole court gave judgment in his favour.

Morton, Justice, was of opinion, that only actions of account were within the exception. The report does not contain the reasons assigned by the other judges, otherwise than by stating that they were the reasons given by Mr Jones in his argument. These were that the statute intends to except nothing concerning merchandise between merchants, but only accounts *current* between them, whereas the declaration in the second count was on an account stated and agreed. He also contended, that the first count did not make a case to be brought within the exception, it being only a bargain for wares sold and for money lent; and although it concerned merchandise, and was between merchants, yet that was no reason why it should be excepted out of the statute; for if it should be excepted, by the same reason every contract made between merchants would also be excepted; which was not the intention of the statute; for in the statute *accounts* between merchants only are excepted, and not contracts likewise. He also contended, that actions of account only were within the exception. This point has been since overruled, though it seems to have been long considered as settled law.

This case having been decided, as the reporter informs us, for the reasons assigned by Jones, his argument must be taken as the opinion of the court. It decides, that only accounts, not contracts, between merchants, even although they may concern the trade of merchandise, are within the exception, and that the accounts must be current.

In Cotes v. Harris, at Guildhall, Dennison, Justice, held that the clause in the statute of limitations about merchants' accounts extended only to cases where there were mutual accounts, and reciprocal demands between two persons. This was only the decision of a single judge; but Mr Justice Buller seems to have given it his sanction, also, by introducing it into his work.

[Spring and others v. The Executors of Gray.]

Bul. Ni. Pri. 150. And Lord Kenyon quoted it with appro-bation in Cranch v. Kirkman, Peake's Ni. Pri. 121, adding that he had furnished his note of the case to Mr Justice Buller.

The distinction between an account current and an account stated, has been often taken, 1 Ves. 456; 4 Mod. 105; 2 Ves. 400; 1 Mod. 270; and is now admitted.

The English cases certainly do not oppose the opinion we have formed on the words of the statute.

The American cases, as far as they go, are in favour of it.

In Mandeville v. Wilson, 5 Cr. 15, this court said, that the exception extended to all accounts current, which concerned the trade of merchandise between merchant and merchant. The only addition made in this part of the opinion, to the words used in the statute, is the introduction of the word "current." The statute saves "*accounts current.*" The opinion pro-ceeds to say that an account closed by the cessation of dealing between the parties, is not an account stated, and that it is not necessary that any of the items should be within five years. This decision maintains the distinction between accounts cur-rent and accounts stated.

In Ramchandu against Hammond, 2 Johns. 200, the court determined that the statute of New York, though slightly varying in its language from the English statute, was to be construed in the same manner, and "must be confined to actions on open or current accounts." "It must be a direct concern of trade: liquidated demands, or bills and notes which are only traced up to the trade or merchandise, are too remote to come within this description."

In the case of Coster et al. v. Murray et al., 5th Johns. Ch. Rep. 522, a purchase of goods was made by the agents of the parties at Copenhagen, and shipped to the defendants, mer-chants in New York, on joint account under an agreement made by the agents, that the goods should be sold by the defendants, free from commission, and one-third of the proceeds paid to the plaintiffs, who were insurers. The goods were received and sold by the defendants, who mingled the money with their own, and refused to pay any part of it to the plaintiffs, unless on terms to which the plaintiffs would not accede. To a bill filed by the plaintiffs, the defendants pleaded the act of limi-tations. The plaintiffs contended that the claim was within

the exception of the statute in favour of accounts between merchants, and also that it related to the execution of a trust, and was therefore not within the statute.

On the first point, Chancellor Kent said, "to bring a case within the exception of the statute, there must be mutual accounts, and reciprocal demands between two persons.

"In the present case there was no account current between the parties. There are no mutual and reciprocal demands."

"The defendants took charge of and agreed to be accountable for some goods, or the proceeds thereof, in which the parties had a joint interest; and as concerns the parties, and as between them, this hardly seems to be a trade of merchandise between merchant and merchant."

The chancellor took a very elaborate review of all the English cases in which this exception had been discussed. Many of them went off on other points, many were indecisive, and some of them seem to be opposed to each other, though not on the precise question which has been argued in this case.

He concluded this review by observing: "assuming the case before me to be one that concerned the trade of merchandise between merchant and merchant, I should rather be inclined to think the statute was well pleaded, and that the case did not fall within the exception."

A decree was made in favour of the plaintiff on the other point, from which the defendant appealed to the court of errors.

The cause was argued on several points, the first of which was, "whether it came within the exception of the statute concerning the trade of merchandise between merchant and merchant, their factors or servants."

Mr Chief Justice Spencer said the chancellor had examined the case very elaborately, and had come to the conclusion that the statute was well pleaded; and that the case does not fall within the exception. He added, "whether the statute is at all applicable to a case of mutual dealing and mutual credits between merchant and merchant, is a question not now necessary to be decided, because the present is not a case of that kind. On the part of the respondents, this is no account at all. This is a case of an account merely on the part of the appellants; there is no selling or trading. It is a case of a joint purchase of

[Spring and others v. The Executors of Gray.]

goods, where one of the purchasers takes the whole goods, and is to account for one-third of the proceeds. In such a case, where the items of an account are all on one side, in my judgment it is not within the reason or principle of the exception; which must have intended open and current accounts, where there was mutual dealing and mutual credits.'"

Judges Platt and Woodworth concurred. There was some division in the court of errors; but the decree of the chancellor was affirmed.

This case is stronger than that under consideration, and turns on principles which decide it.

No doubt is expressed in it on the necessity of accounts being mutual, and being open and current, to bring them within the exception of the statute.

On a commercial question, especially on a question deeply interesting to merchants, and to merchants only, the settled law of New York is entitled to great respect elsewhere.

We have found no conflicting decision in any of the states.

The account from the books of the plaintiffs contains one item not founded on the contract for the freight of the barque Morning Star, the loss on the sloop Francis, insured by said Gray. But this item itself is not within the exception, and was abandoned by the plaintiffs, who declared that their whole cause of action arose from the contract. The claim, to bring the case within the exception, rests entirely on the sale of the inward cargo. This single transaction has not equal (certainly not superior) pretensions to being an account current between merchant and merchant, a case of mutual accounts between them, with the sale made by the Murrays, in Carter et al. v. Murray et al., of goods purchased on joint account, shipped to the defendants on joint account, and sold by the defendants on joint account.

We are of opinion that this action is not founded on an account concerning the trade of merchandise between merchant and merchant, their factors or servants; and is not within the exception of the statute of limitations. There is no error in the instructions given by the circuit court, and the judgment is affirmed, with costs.