## WALTER BLAIR *versus* ANDREW DREW.

The exception in the statute of limitations, relative to demands concerning the trade of merchandise between merchant and merchant, their factors, and servants, does not extend to accounts between parties, not merchants, and respecting transactions which do not possess a mercantile character.

Items, in mutual accounts, within six years next before action brought, constitute, of themselves, no admission of an unsettled account extending beyond six years, nor any evidence of a promise to pay a balance, so as to take the case out of the statute of limitations.

ASSUMPSIT upon an account annexed to the writ, containing sundry items of charges, at different times, between June 1817, and May 1825 ; and divers items of credit between October 1818, and December 1826.

The writ was dated December 13, 1830.

It appeared from the report of an auditor, that in April, 1826, the defendant then being under guardianship, as an insane person, and there being boards and logs which belonged to him at the plaintiff's mill, his guardian told the plaintiff he might saw the logs, and give the defendant credit for the avails and for the boards then on hand, which was done.

The credits so given were of greater amount than the charges of the plaintiff within six years before the suit.

If these facts took the case out of the statute of limittions, the auditor reported a balance in favor of the plain-

tiff, otherwise that judgment be rendered for the defendant.

*Bliss*, for the plaintiff.

*Bartlett*, for the defendant.

PARKER, J.

It is argued in this case, that as some of the items of the credit are within six years next before the commencement of the suit, they are evidence of a new promise, and draw after them all the items on the other side within six years prior to the dates of the credits, and thus defeat the operation of the statute of limitations as a bar to the plaintiff's demand.

If this were so as a general principle, it by no means follows that such principle would apply, under the circumstances of the case. The only items of credit within six years arise from a transaction not by the defendant, with the plaintiff, but by a guardian of the defendant.

It is unnecessary to settle, at this time, whether a guardian can by any admission or promise in relation to a debt barred by the statute, so defeat its operation as to bind his ward, and take away the bar which would otherwise exist in his favor.

Even if a guardian possessed such general power, it might be a sufficient answer to the plaintiff's position, that there were here items of charge within six years, as well as before that time : and there is no evidence to show that the guardian had any actual knowledge of the state of the accounts as now exhibited by the plaintiff ; or that he in the transaction had any reference to any particular items of charge ; or that he intended to waive the statute of limitations, if in his power so to do ; or that he admitted any particular charges, or any particular balance to be due upon that occasion.

There is no evidence of the admission by the guardian of any debt that he was willing to pay on behalf of his ward, or none certainly beyond the avails of the lum-

ber, which he then authorised the plaintiff to receive and give credit for ; nor that he had knowledge of the existence of any claim beyond that even if it might be supposed that thus far he was intending to make a payment.

It would surely be extending the doctrine of implied admission to the extreme, if an admission by a guardian was to be implied under such circumstances, and his vard thereby subjected to the payment of such unlimited demand as a creditor might afterwards attempt to prove against him.

As, however, the general principle contended for in regard to mutual accounts is one of much importance, we prefer to examine it upon its merits, aside from this consideration, and as though this transaction had been between the plaintiff and the defendant himself.

It seems probable that the doctrine that every item of debt or credit in an account will take all the items upon the other side within six years next previous, from the operation of the statute, had it origin in the exception of the statute relative to accounts between merchant and merchant.

The statute of 21 James I. c. 16. was the first statute of limitations, and its limitation of personal actions, in the third section, is generally similar to the first section of our present statute. It enacted that " all actions of accounts, and upon the case, other than such *accounts* as concern the trade of merchandize between merchant and merchant, their factors or servants," should be commenced within six years next after the cause of action or suit, and not after. With an omission of the word " accounts," the exception in our statute is in its terms like that of James. After the passage of the statute of James, differences of opinion arose upon this exception.

It was at first held, that it applied only to actions of of account, properly so called, but this was afterwards overruled, and is not now held to be law. 2 Saund. 127, d note 7.

It has also been held, that it does not apply to bills of exchange, or promissory notes, given upon mercantile transactions. 2 Saund. 127 e n ; 2 Johns. Rep. 200, *Ramchander* v. *Hammond*. Nor to mercantile accounts which have been closed by stating the account, and ascertaining the balance, more than six years previous to suit. 2 Saund. 125, *Webber* v. *Tivill*; 1 Lev. 287 ; 2 Vern. 695. There are many cases showing that the account must be an " open" " current account," in order to come within the exception.

A question of more difficulty and diversity of opinion has been, whether, in order to bring merchant's accounts within the exception, the accounts must be mutual, and some of the items within six years. Upon this question the decisions and opinions of different tribunals have been various and conflicting, and it would be in vain to attempt to reconcile them. 5 Johns. Ch. Rep. 524, *Coster* v. *Murray*, where the English decisions are collected by Chancellor Kent. 5 Cranch, 15, *Mandeville* v. *Wilson* ; 2 Dallas, 264, *Stiles* v. *Donaldson* ; 2 Yates, 105, S. C ; 6 Pick. 362, *Bass* v. *Bass* ; 8 Pick. 187, S. C ; 6 Greenleaf, 307, *Mc Lellan* v. *Crofton* ; 20 Johns. 576, *Murray* v. *Coster*, on appeal ; 6 Peter's, Sup. C. Rep. 151, *Spring* v. *The Executors of Gray on Error*.

It is not necessary to choose between the conflicting opinions upon this subject, on the present occasion.

After these questions had arisen upon this exception relative to merchants accounts, in the case *Cotes* v. *Harris*, briefly reported, Bull. N. P. 149, the account being all upon one side, and the statute pleaded, the plaintiff's counsel insisted that the account being current, and never liquidated, and the last item within six years, it should draw the former items out of the statute. The report does not state whether the parties were merchants, but says " Dennison, J. held that the clause in the statute of limitations about merchant's accounts extended only to cases where there were mutual accounts, and reciprocal

demands between two persons : but if there were only a demand by A, against B, in the common way of business, as by a tradesman on his customer, that cannot be called merchant's accounts ; and he was very clearly of opinion that in this case, the statute was a bar to all demands of above six year's standing."

Some time after this came the case, *Cranch* v. *Kirkman*, Peake's N. P. C. 121, which was an action for goods sold and delivered by plaintiff's testator, and a set off was filed, of several items for goods, sold at different times. Some of the items on both sides were within six years. The plaintiff's counsel contended that the greater part of the set off was within the statute, no promise being proved within six years. " Lord Kenyon said he thought this was within the exception in the statute as to merchant's accounts. He agreed that where the demand of one party arises long after the demand of the other, that shall not revive the antecedent account ; but this was in the nature of a running and *mutual* account between the parties, and was precisely the case put by Mr. J. Dennison in *Cotes* v. *Harris*." The plaintiff's counsel " contended that this exception extended to no other description of persons but *merchants*, in which he was overruled by Lord Kenyon."

His Lordship, however, seems soon after to have placed the matter upon a different ground in *Catlin* v. *Skoulding*, 6 D. & E. 189. The action was for use and occupation of a house, &c, and a set off was filed for goods sold. The last half year's arrear of rent, and one or two of the last articles of the defendants bill, were within six years before the plaintiff's writ. Lord Kenyon after observing, upon an objection to the form of the replication in not alleging that the money was payable in trade between the parties as merchants, that " where there is no item of account at all within six years before the action brought, the plaintiff will be precluded unless he can bring his case within the exception in the statute concerning merchant's

accounts; and in such a case his replication must bring his case within the statute. But it must be remembered that there the plaintiff is not barred, though there has been no transaction of any kind between the parties for six years"—says, as to the case then before him—" But the present case steers wide of that objection ; it is not doubted that a promise or acknowledgement within six years will take the case out of the statute ; and the only question is whether there is not evidence of an acknowledgment in the present case. Here are mutual items of account ; and I take it to have been clearly settled, as long as I have any memory of the practice of the courts, that every new item and credit in an account given by one party to the other is an admission of there being some unsettled account between them, the amount of which is to be afterwards ascertained ; and every act which the jury may consider as an acknowledgement of its being an open account is sufficient to take the case out of the statute."

It would seem, however, that the broad doctrine assumed by him was not so " clearly settled" before that time, for Ashurst, J. doubted respecting the case, and it was adjourned, but afterwards judgment was given for the plaintiff.

Perhaps the decisions of *Cranch* v. *Kirkman*, and *Catlin* v. *Skoulding*, were in some measure founded upon opinions which had been held in chancery. In *Scudamore* v. *White*, 1 Vern. 456, it is laid down that "the statute of limitations is no plea in bar to an open account." As this is the whole of the case as reported, it does not appear whether the parties were merchants, or upon what principle the decision was founded.

It is stated by the Chancellor, 19 Ves. Jr. 183, that " Lord Talbot held that an open mutual account was within the statute, unless there was some item of charge and debit within six years before the bill ; overruling that case" of *Scudamore* v. *White*.

And in the same case, reference is made to an observation of Lord Hardwicke, " that the exception, as to merchant's accounts, is not confined to open accounts merely ; for between common persons, as long as the account is continued, the statute does not bar." Lord Hardwicke, however, seems to have held a different doctrine in relation to the exception, 2 Ves. Sen. 400, *Welford* v. *Liddel*.

From whatever source the doctrine of either *Cranch* v. *Kirkman*, or *Catlin* v. *Skoulding*, may have been derived, they have been considered as leading cases, to show that a mutual account, with items within six years, is not barred by the statute ; and they have been cited often together, as precedents for this general position, in subsequent cases. They were so cited, 1 N. H. Rep. 19, *Bennett* v. *Davis*, where it was taken for granted that such was the law relative to mutual accounts, though the question did not arise there, the account in that case being only upon one side.

Those cases, however, are based upon entirely distinct grounds, *Cranch* v. *Kirkman* being founded upon the principle that such mutual accounts are within the exception, as to merchant's accounts, and so never within the statute, while *Catlin* v. *Skoulding* is upon the ground that the items within six years are an admission of an unsettled account, and evidence of a promise, taking the other items out of the statute.

The subsequent authorities, and elementary writers, have more generally adopted the latter as the reason, though some have suggested the former as the true principle. 2 Mass. Rep. 217, *Cogswell* v. *Dolliver* ; 3 Pick. 110, *Union Bank* v. *Knapp* ; 4 Greenleaf, 337, *Davis* v. *Smith* ; 6 Cowen, 195, *Tucker* v. *Ives* ; 5 Johns. Ch. Rep. 524, *Coster* v. *Murray* ; 7 Wendell, 322, *Kimball* v. *Brown* ; 3 Bing. 638, per Park, J. ; Ballentine, on Limitations, 70 ; Angell, on Lim. 198.

The greater part of the authorities, however, it is believed, have taken the position rather as matter of prece-

dent, than from any examination of the intrinsick merit of the principles of either case, and it is to be observed that the principle is stated in different ways in the different cases—sometimes, that the case is within the exception—or within the equity of the exception—sometimes, that the items within six years are an admission, and evidence of a new promise—at others, that such items draw after them the other items.

Cases thus differing in their principles and language cannot be considered as settling this question satisfactorily ; and after a deliberate consideration we are fully convinced that neither *Cranch* v. *Kirkman*, or *Catlin* v. *Skoulding*, can be supported—that the exception is confined not only to cases between merchant and merchant, their factors and servants, but to the trade of merchandise between such persons—that one item in an account founded upon a single independent transaction, carries with it, in the nature of things, no admission of any other dealing between the parties : certainly no admission of another subsisting debt, which the party is liable and willing to pay—and that such item of itself possesses no power to draw after it any thing else.

In the first place, as to the exception in the statute. That this was considered in the earlier cases to be confined to merchants, and to transactions concerning the trade of merchandise between them, is very evident. 2 Saund. 127, note 6 ; 2 Atkins, 612, *Sturt* v. *Mellish*.

It was even held, in one case, that it was intended to embrace only merchants trading beyond sea. 2 Saund. 127, c, note ; Com. Rep. 711.

Other, and later, opinions, also, are found confining the exception strictly to mercantile transactions between merchants. *Martin* v. *Heathcote*, 2 Eden. 169, cited 5 Johns, Ch. Rep. 528 ; 20 Johns, 583—592—599, *Murray* v. *Coster* ; 10 Pick. 118, *Codman* v. *Rogers* ; and 5 Mason, 525, *Spring* v. *Gray*, and 6 Peters, 151, S. C. in error, are very explicit on this point.

It is difficult to discover upon what principle the earlier cases were ever departed from, or how this exception relative to merchant's accounts can be made to apply indiscriminately to all mutual accounts. The exception is very specifick in its terms—" other than such as concern the trade of merchandise between merchant and merchant, their factors and servants." How can this language, with any regard to its obvious meaning, be construed to mean all actions upon accounts, or all cases where there are mutual accounts, with items within six years ? No greater violence to language can be imagined. It is making the terms " trade of merchandise," " merchant," " factors and servants," mean absolutely nothing ; or what is worse, making all these terms mean " *mutual accounts.*"

And there is no reason for a belief that the legislature intended any such construction. There is not only the earlier decisions, showing that the exception was then understood and applied in a confined sense, according to its language, but there is no substantial reason why the statute should not be applied to bar items of account generally, which are more than six years old, as well as to bar promissory notes. There is no greater presumption that the latter have been paid after such a lapse of time, than there is that the former have been adjusted. There is more danger of false and unfounded demands upon accounts than upon promissory notes, for the latter contain the signature of the party to be charged, and it is more usual to take up and cancel promissory notes, when paid, than it is to take receipts upon accounts, when settled, or to preserve such receipts, when taken. There is quite as much propriety in a statute of repose in relation to accounts, as there is upon any other branch of the subject matter of the statute.

Good reason may have existed, when the statute of James was passed, for excepting actions concerning the trade of merchandise between merchants. There may

be less for continuing such exception in the statute at the present day—but it is there, and is to be administered accordingly. Who are merchants within the meaning of the exception, and what dealings come within the " trade of merchandise," may, in some cases be questions of difficulty. It is sufficient for the purpose of this case, that neither of these parties, nor their dealings, come within the description of the exception ; and the plaintiff's counsel has not attempted to sustain the case upon that ground.

Then as to the position that every new item and credit in an account, given by one party to the other, is an admission of an unsettled account, and evidence of a promise to pay the balance, whatever that account and balance may appear to be.

On the supposition that such item and credit could be fairly construed into an admission of an unsettled account, that would not be sufficient. Such constructive acknowledgement would contain no evidence to what it had or might have reference. It designates no demand. It refers to no debt. But " it ought clearly to appear that an acknowledgement relates to the identical debt or demand sought to be recovered upon the strength of it." 6 Cowen, 674, *Clarke* v. *Dutcher ;* 3 Wendell, 532, *Stafford* v. *Bryan ;* 6 Peters, 86—94, *Moore* v. *The Bank of Columbia ;* 1 Peters, 360, *Bell* v. *Morrison.*

In the latter case, where there was a distinct general admission of an unsettled account, upon which something was due, Mr. Justice Story presents in strong terms the danger of permitting an indeterminate and casual admission of the existence of an unsettled account, without any specification of amount or balance, to take a case out of the statute, and let in evidence *aliunde* to establish any debt, however large, and at whatever distance of time.

But farther, upon what principle is it, that a sale of an article upon credit is an admission of any thing else except that the subject matter of that transaction had ex-

istence ? Upon what principle does it admit the exis-
tence of an unsettled account upon the other side, or
draw after it any thing else ?

If, in the nature of things, there could not be an ac-
count consisting of a single item, it might well be said
that the charge of one item was an admission of some-
thing more. If, in the ordinary transaction of business,
there could not be an account upon one side, without an
account upon the other to balance it, in whole or in part,
there would be some foundation for such admission.
But every day's experience negatives all this ; accounts
exist upon one side only ; and of no more than a single
item. The purchase is made—the credit is given—and
this is all the dealing between the parties.

Many of the decisions upon the statute of limitations,
much controverted, if not exploded, were founded on
the assumption, that the statute was based upon a
presumption of payment—and of consequence any ad-
mission that the debt was unpaid rebutted the presump-
tion, and took the case out of the statute. Granting the
premises, the conclusion followed well enough. But
even upon that view of the statute, the position is whol-
ly untenable that an item of credit constitutes an admis-
sion of another preexisting debt upon the other side, and
an admission moreover that it has not been paid.

Aside from the statute of limitations, such doctrine of
admission would receive no countenance whatever. No
jurist would ever argue, that because he had proved
one item of account, it was any evidence from which a
jury might infer and find other distinct and independent
items. Still less would it be contended that an account,
proved by the plaintiff, was an admission which furnish-
ed evidence in favor of another account of independent
items offered by the defendant, or that it was of any
weight to prove the defendant's account, even in con-
nexion with other evidence. And if it furnishes no evi-
dence of admission in such case it can raise no fair ad-
mission as against the statute.

No admission, then, of any account upon the other side, can be fairly inferred from the act of making a charge on account against any individual. It is no admission of an unsettled account, beyond the very charge itself. It does not imply that the party giving the credit has any other item of claim against the party charged. Still less does it imply that the party against whom the charge is made has an account to balance it, in whole, or in part. It is of itself a distinct and independent transaction ; and it might with just as much propriety be said that a party making a charge of an item of account, thereby admits that it is paid, in whole or in part, as to say that he thereby admits the existence of an unsettled account against himself. Nay, it would be safer for the individual to hold him as making such an admission, which could extend no farther than in discharge of the demand which constituted the acknowledgement ; whereas, holding the admission to extend to an unsettled account against himself, may subject him, in connexion with fabricated evidence, or from a loss of vouchers, or testimony, to the payment of pretended claims upon the other side, of an amount vastly beyond the small item, by the charge of which he has drawn down such consequences upon himself.

We cannot deem it any objection to our reasoning upon this subject, that there may be cases where an account upon one side might be recovered, while one upon the other side of older date is barred. If it be so it will arise from the *laches* of the party. If articles upon one side are delivered in payment of a prior existing account upon the other, the delivery raises no cause of action. If not delivered in payment, each account is distinct and independent, as much so as promissory notes held upon the one side and the other ; and there is as much reason why a party should not avail himself of an account, which is barred by the statute, in discharge of another account due from him, and to which he has no other defence, as there is that he should not avail himself of a

promissory note which is barred, in the same way, or that he should not recover that, or any other demand which is barred, in an independent suit upon the demand itself.

We have endeavored to examine this subject with all the care and attention which the importance of the principle involved, and a high respect for the learned tribunals whose decisions have been adverse to the opinion now expressed, demand of us.

Consistently with the principles of repeated decisions in this court, that in order to raise a new promise by implication from an acknowledgment, it must contain a direct and unqualified admission of a subsisting debt, which the party is liable and willing to pay ; we cannot hold that one item in an account has of itself, any force or effect to take other items, which would otherwise be barred, out of the statute—and the result of our investigation is that there must be

*Judgment for the Defendant.*