## MILLS & Co. v. DAVIES.

$\frac{42}{99}$ $\frac{91}{506}$

1. **Statute of Limitations**: ACCOUNT: LAST ITEM. The statute of limitations commences to run from the date of the last item of an account current, whether such item be upon the debit or the credit side.

2. ———: ———: CONTRACT. That the prices of certain articles charged in the account had been agreed upon between the parties will not place such articles in a different condition, respecting the operation of the statute of limitations, from the balance of the account, which did not become the subject of a special agreement.

3. ———: ———: ———. When goods sold or work performed under a contract are properly the subject matter of a general account containing other items in addition, the bar of the statute will not apply to them in any other sense than to the general account, and an action may be maintained thereon at any time before the statutory limit has transpired since the date of the last item of the account.

*Appeal from Dallas Circuit Court.*

TUESDAY, DECEMBER 14.

ON February 24, 1875, this action was commenced. The plaintiffs by their petition state, that between May 28 and October 1, 1869, they performed labor and furnished materials, upon request of defendant, in manufacturing cards, circulars and 2,500 copies of a book known as Davies' History and Directory of Madison County, Iowa. That said goods were to be delivered to defendant as he called for them. That said cards, circulars and 1,900 copies of said book were so delivered at the times mentioned in the account hereafter set out. That the remaining 600 copies are still in plaintiffs' possession, subject to defendant's order, he having failed to call for the same. That defendant verbally agreed to pay 65 cents per thousand ems for the type-setting on said book; 65 cents per

token for the press-work; 30 cents per copy for binding; $55 for the map of Madison county, printed in each volume, and $10 a ream for paper used. That all other charges in said account are reasonable, and for work and material actually furnished. That said account is as follows:

1869.

| | | |
|---|---|---:|
| June 15. | 1,000 circulars...........................$  4 00 |
| July  4. | 1,000 circulars........................    4 50 |
| July 14. | Cards .............................    3 50 |
| July 23. | 3 packing boxes ...................    5 25 |
| Aug.  6. | 1 packing box and cartage...........    2 00 |
| Aug.  9. | 1 packing box......................    2 00 |
| Oct.   1. | 866,084 ems at 65 cents.............  562 95 |
| | 180 tokens at 65 cents..............  117 00 |
| | Binding 2,500 copies at 30 cents.....  750 00 |
| | Engraving map.....................   55 00 |
| | Transferring, printing, and paper for |
| | maps............................   40 00 |
| | Pressing sheets....................   33 70 |
| | 46 reams paper....................  460 00 |
| | Lining paper......................   36 00 |
| | | $2,075 90 |

That the defendant has from time to time made the following payments on said account:

1870.

| | | |
|---|---|---:|
| May 28. | By cash............................$500 00 |
| July 20. | By cash............................  100 00 |
| July 24. | By cash............................  100 00 |
| Aug.  5. | By cash............................  300 00 |
| 1870. | | |
| Feb. 22. | By cash............................   10 00 |
| 1872. | | |
| April 9. | By collection from E. O. Burt & Co..  203 00 |
| 1873. | | |
| June  4. | By balance of collection from E. O. |
| | Burt & Co......................   55 00 |
| | | $1,268 00 |

That there is due plaintiffs a balance, $807.90, for which they claim judgment with interest from December 4, 1873.

Defendant, by answer,

1.  Denies generally the allegations of the petition.

2.  Admits that the plaintiffs printed for him the cards and circulars as charged, and that they were reasonably worth the sum of $12, and avers that he paid the plaintiffs said amount therefor in July, 1869.

3.  That on May 28, 1869, he made a verbal contract with plaintiffs whereby they were to furnish the material, print, bind and deliver to him twenty-five hundred of Davies' History of Madison County, Iowa, within three weeks from that date; and defendant was to pay 60 cents each, instead of 65 cents as stated in plaintiff's petition, for composition and press-work. That afterwards it was agreed that plaintiffs should print a map at fifty dollars; only a part of twenty-five hundred copies were completed, and nineteen hundred only were delivered in the fall of 1869; and defendant annexes a statement of the account as claimed by him, making a small balance in his favor.

4.  Defendant avers that the cause of action is founded upon a verbal contract and not upon an open and current account, and did not accrue within five years before the commencement of this action.

5.  Defendant set up a counter-claim for $1,000, for eight weeks' work at $20 per week, and for damages resulting to him by reason of the plaintiffs' failure to print and deliver the books within the time agreed.

The plaintiffs, for reply, deny the allegation of defendant's counter-claim.

Upon these issues the cause was tried to a jury in March, 1875. The evidence tended to show that in May, 1869, the defendant employed the plaintiffs to do the composition, press-work and binding, for twenty-five hundred copies of the book mentioned in the pleadings; whether the price per thousand ems for composition, and per token, for press-work, was 60 cents or 65 cents, the evidence is in conflict. And, also, that shortly after that agreement, another agreement was made

between the parties, whereby the plaintiffs were to lithograph and bind with said book a map of Madison county, which they did, and whether the price agreed was $50 or $55, the evidence is in conflict. There was evidence also tending to establish the several items both of debit and credit as the same are set out in the plaintiffs' petition; and the evidence also tended to establish the defendant's claim respecting the work and damages in his counter-claim.

The defendant was introduced as a witness in his own behalf and among other things testified as follows: " The payments I made on the contract are correctly stated in the plaintiffs' petition. The reason I made the payments there mentioned, without asking deduction for $160 worth of work, was because we had not made a full settlement; we have never made a settlement."

The court gave to the jury the following among other instructions:

" 6. Upon an open, continuous, current account the statute of limitations begins to run from and after five years from the date of the last item, whether on the debit or credit side; and in this case, the last item on plaintiff's account being June the 4th, 1873, if you find from the evidence that there was not an express unwritten contract between the parties for all the work and material furnished by plaintiffs in getting up the books in evidence, but that the same was a mere matter of account between the parties, and at the time the work was done and materials furnished it was by the parties so understood to be, then the plaintiffs' claim is not barred by the statute of limitations."

" 7. If you find from the evidence that the work and materials embraced in plaintiffs' claim, after the first three items were done and furnished by plaintiffs for defendant under an express unwritten contract entered into between the parties, and that there was no time of payment fixed in the contract, then the plaintiffs' cause of action accrued at the time the work was done, and the materials furnished; and if you further find that the work was done, and the materials furnished under the unwritten contract, before the 16th day of February, A. D.

1870, then plaintiffs' cause of action for such work and material is barred by the statute of limitations, and you will on that part of plaintiffs' claim find for the defendant."

" 12.   If you fail to find that there was an express unwritten contract between the parties for the work and materials sued for by plaintiffs, and if you find for the plaintiffs on their account for the work and materials set out in the account, you will allow them for so much of the work and materials as has been proven, and the price will be the contract price so far as there was a contract price, and for the balance you will allow them whatever the same was reasonably ·worth; and, after deducting therefrom all credits given by plaintiffs on the account, and all additional credits proven by defendant, you will find the balance due at the time of the last credit, and reckon interest on such balance down to the present time as stated in the next three instructions."

The jury returned a verdict for defendant, and also returned answer to special interrogatories as follows:

" 1.  Ques.   Were the materials furnished and the work and labor performed for Davies' Directory, under a special unwritten contract?

Ans.  Yes.

2.  Ques.   Did the defendant, within five years next before the commencement of this action, in writing, admit an indebtedness to plaintiffs or promise to pay the same?

Ans.  No."

A motion for new· trial being overruled, and judgment entered for defendant for the costs of the action, the plaintiffs appeal.

*Louis Ruttkay*, for appellant.

The statute of limitations commences to run from the date of the last item of an account.  (*Thorn & Stein v. Moore*, 21 Iowa, 288.)   It is error to give instructions based upon a theory not sustained by the evidence.  (*Byington v. McCadden*, 34 Iowa, 217; *Rindskoff & Bro. v. Curran*, Id., 327.) The measure of damages under defendant's cross-claim is the

difference between the contract price and the market price at the time and place of selling. (*Boies & Barrett v. Vincent*, 24 Iowa, 393; *Jamison v. Gray*, 29 Iowa, 541.)

*Willard, Calvert & Hopper*, with *C. A. Berger*, for appellee.

The statute of limitations runs from the time when the contract was broken. (*Batsley v. Faulkner*, 3 Barn. and Ald., 288.) Where work is performed under several distinct contracts, it is an error to treat it as a case of continuous, open, current account. (*Shorick v. Bruce*, 21 Iowa, 303.)

COLE, J.—It will be observed by the somewhat unusually extended statement of facts, preceding this opinion, that the account upon which plaintiffs bring their action contains numerous items, beside the five main items for composition, press-work, paper, binding and engraving the map, respecting which it was claimed that there was a special contract. For instance, the first three items for circulars at two different dates, and cards upon another date, are not claimed to be embraced within the terms of the special contract; and the defendant by the second count of his answer expressly admits the correctness of these items, and to avoid the effect of them, as constituting with the other items a proper subject matter of an account, he avers that he paid therefor in July, 1869. But by reference to the credits given in the account, it will be seen that no such distinct payment was made, and the defendant by his own testimony affirms that the payments on the contract are correctly stated in the plaintiffs' petition and account. The other items for packing boxes, cartage, printing and paper for maps, pressing sheets and lining paper, are entirely outside of any contract, even as claimed by the defendant; and some of them, such as the packing boxes, cartage, etc., were not necessary in order to complete the contract, but were only made so by the failure of defendant to call for or receive the books when completed, or the failure of plaintiffs to complete them in time. The items for 46 reams of paper which were necessarily embraced in the contract, so far

as to fix the price per ream, were uncertain as to the number of reams, and would remain so necessarily to some extent, at least until the completion of the work. The items of credit, being seven in number, are for payments which must have been made simply upon the contract, and such payments necessarily constitute proper items of an account—since only by the keeping of *an account* thereof could the parties properly settle that business. Some of these items of credit are as late as 1872 and 1873, and we have held that the statute of limitations which provides, "Sec. 2531, when there is a continuous, open, current account, the cause of action shall be deemed to have accrued on the date of the last item therein as proved on the trial," refers to the last item, whether it be on the debit or credit side. *Thorn & Stein v. Moore*, 21 Iowa, 285; see, also, *Penniman v. Ratch*, 3 Metcalf, 216.

1. STATUTE of limitations: account: last item.

The fact, if it be such, that the parties agreed upon the price per thousand ems for composition, and per token for press-work, and per volume for binding, when the amount of such composition, press-work and binding or either of them could only be ascertained when the work was done, would not in our opinion render such items improper items of an account, or effect the statute of limitations on such account when made. The case is different from a contract to do a particular item of work at a fixed price for such item. But even in such case, if there were other dealings properly matters between the same parties, we should hesitate long before holding that such distinct items of work, at a specific price, might not properly constitute an item, in the account between such parties. For instance, a tin manufacturer or merchant may sell his wares to a customer and have an open account therefor, and in its progress the customer may order one or more specific items of work at a price agreed in advance, and they being done and furnished him, may they not properly be inserted in the account against the customer? And could the customer in such case defeat the claim for such items, by showing the fact that the work was done, and the article furnished under a special contract as to the price?

2. ——: ——: contract.

VOL. XLII.—7

In our view, therefore, the court erred in giving the seventh instruction set forth in the statement of facts preceding this 3. ——: ——: opinion, for that it made the running of the statute of limitations to depend upon whether there was an unwritten contract respecting certain items of the account, regardless whether such items were properly the subject matter of an account. The evidence shows that the plaintiffs were engaged in the business of publishers, stationers, printers, binders and lithographers; and to hold that items furnished to customers connected with their business, and properly the subject matter of an account, were to be excluded therefrom, because of a parol agreement as to price before their manufactory or delivery, would be to overturn the theory of the law. For in contemplation of law there is an implied agreement on the part of the customer, at the time of delivery of an article to him, to pay the reasonable value thereof. Such an agreement has no greater or less binding force upon the customer, if it is expressly uttered at the time.

There is nothing in this case tending to show in any degree, that the items of this account, as charged, are not properly the subject matter of an account between the parties. But it is sought to change the effect of the statute of limitations, by showing that the parties simply agreed in advance as to the price of certain articles. And this is the practical effect of instruction number seven, and the same error inheres in number twelve. And herein lies its error. The case of *Spring v. Executor of Gray*, 5 Mason, 505, and s. c. 6 Pet., 151, has no bearing in this case, for there the question was whether the parties plaintiffs were within the exception of the statute of limitations, made in favor of "such accounts as concern the trade of merchandise between merchant and merchant." For the error of the court in giving instructions 7 and 12, and thereby in effect holding that the plaintiffs' right of recovery depended upon the fact as to whether a special contract was made as to price, respecting certain items of the account, instead of upon the fact whether they were properly the subject matter of an account under the circumstances, and between the parties, the judgment is                    REVERSED.