3 U.S. 297
 3 Dall. 297
 1 L.Ed. 610
 The United States
v.
La Vengeance
 August Term, 1796.
 
 1
 Error from the Circuit Court for the district of New York. It appeared on the return of the record, that La Vengeance, a French privateer, had captured and carried into New York, a Spanish ship, called La Princessa de Asturias; and that thereupon Don Diego Pintardo, the owner of the prize, filed a Libel in the District Court, complaining of the capture; alledging that La Vengeance was illegally fitted out within the United States; and praying restitution and damages: but on a claim, exhibited in behalf of the owners of the privateer, the District Court dismissed the Libel with costs; and, upon appeal to the Circuit Court, that decree was affirmed. The fate of Pintardo's Libel determined, likewise, the fate of an information filed ex officio, by the District Attorney, claiming the privateer as a forfeture, upon the same allegation, that she had been illegally armed and equipped in the United States, in violation of the act of Congress: and in both these decisions the parties acquiesced.
 
 
 2
 But a third proceeding had been instituted against the privateer, in which the District Attorney filed, ex officio, an information, stating 'that Aquila Giles, Marshal of the said district, had seized to the use of the United States, as forfeited, a certain schooner, or vessel, called La Vengeance, with her tackle, apparel, and furniture, the property of some person, or persons, to the said Attorney unknown; for that certain cannons, muskets, and gun-powder, to wit, 2 cannon, 20 muskets, and 50 boxes of gun-powder, were between the 22nd of May, 1794, and the 22nd of May, 1795,* exported in the said schooner, or vessel, from the said United States, to wit, from Sandy-Hook, in the state of New Jersey (that is to say, from the city of New York in the New York district) to a foreign country, to wit, to Port-de-Paix, in the island of St. Domingo, in the West-Indies, contrary to the prohibitions of the act, in such case made and provided,' etc: And praying judgment of forfeiture accordingly. A claim was filed on behalf of the owners of the privateer, denying the exportation of cannon or muskets; and alledging that the gun-powder constituted part of the equipment of the Semillante, a frigate belonging to the Republic of France, and had been taken from her and put on board the privateer, to be carried to Port-de-Paix, by order of the proper officer of the said Republic. It was, also, alledged, that the schooner, after her arrival at Port-de-Paix, was bona fide sold to one Jaques Rouge, a citizen of the French Republic, in whose behalf the claim was instituted.
 
 
 3
 After argument, the District Judge decreed, that the schooner should be forfeited; but, upon appeal to the Circuit Court, the decree was reversed, and Judge Chace certified that the judgment of reversal was founded on the following facts: '1st. That from 18 to 20 muskets, were carried in the said schooner La Vengeance in the month of March or April, 1795, from the United States of America, to a foreign country, to wit, to Port-de-Paix, in the West Indies: But that such muskets were the private property of French passengers on board of the said schooner, carried out for their own use, and not by way of merchandize.' 2nd. 'That upwards of 40 boxes of gun-powder were carried at the same time, from the said United States, in the said schooner to Port-de-Paix, aforesaid: But that such gun-powder was taken from on board the Semilliante frigate, lying in the harbour of New York, was a part of her equipment, did not appear ever to have been landed in the said United States, was carried out for the use of the French Republic, was delivered to the commander in chief at Port-de-Paix - and was not exported by way of trade or merchandize.'
 
 
 4
 From this judgment of the Circuit Court, a writ of error was brought on behalf of the United States, the general errors were assigned, and the Defendant in error pleaded in nullo est erratum. The issue was argued on the 10th of August, by Lee, Attorney General of the United States, for the Plaintiff in error, and by Du Ponceau, for the Defendant:* but no exception was taken, by the former, in reference to the merits of the cause.
 
 Lee, Attorney General:
 
 5
 There are two grounds on which this writ of error is to be supported-1st. That it is a crininal cause; and, therefore, it should never have been removed to the Circuit Court, the judgment of the District Court being final in criminal causes: And 2nd. That even if it could be considered as a civil suit, it is not a suit of Admiralty and Maritime jurisdiction; and, therefore, the Circuit Court should have remanded it to be tried by a jury in the District Court.
 
 
 6
 1st. Point. All causes are either civil or criminal; and this is a criminal cause, as well on account of the manner of prosecution, as on account of the matter charged. Thus, Informations are a proceeding at common law, and classed with criminal prosecutions, 4 Bl. Gom. 303; and the act of Congress which was framed to protect the United States, at a critical moment, from a serious injury, inflicts for the offence of violating its provisions, a forfeiture of the vessel employed in exporting arms or ammunition, and a fine of one thousand dollars. It is true, that it may be considered, in part, as a proceeding in rem; but still it is a criminal proceeding. There are but two kinds of information known in England, one in the Exchequer touching matters of Revenue, the other in the King's Bench, touching the punishment of misdemeanors. 3 Bl. Com. 262. Now, the revenue of the United States is not at all concerned in this case; nor would the Court of Exchequer take cognizance of a similar case in England. If, therefore, the United States do not claim La Vengeance for debt, nor as a mere exercise of arbitrary will, but on account of some offence, some crime, that has been committed; it follows, of course, that the process used to enforce the claim, must, under any denomination, be, in fact, a criminal process; and, in all criminal causes, whether the trial is by a jury, or otherwise, the judgment of the District Court is final. Though penal suits have sometimes been construed civil actions; it has only been done where individuals have been concerned, and, in one instance, to admit the testimony of a Quaker, on affirmation; but none of the exceptions to the general rule will reach the present case. 1 Wills 125. 2 Stra. 1227. Cowp. 382.
 
 
 7
 2nd. Point. The ninth section of the Judicial act declares, that 'the trials of issues in fact, in the District Courts, in all causes, except civil causes of Admiralty and Maritime jurisdiction, shall be by jury.' If there are criminal causes of Admiralty and Maritime jurisdiction they would not be within the exception, and must be tried by jury. But this criticism is not insisted upon; since the present case cannot, in any sense, be deemed a civil suit of Admiralty and Maritime jurisdiction. The principles regulating Admiralty and Maritime jurisdiction in this country, must be such as were consistent with the common law of England, at the period of the revolution. How, then, would a similar case be considered in England? Blackstone says, 'all admiralty causes must be causes arising wholly upon the sea, and not within the precincts of any county.' 3 Bl. Com. 106. And Coke had previously remarked, 'that altum mare is out of the jurisdiction of the common law, and within the jurisdiction of the Lord Admiral.' Now, the offence here charged is that of exporting arms and ammunition out of the United States to Port-de-Paix. The act itself, indeed, without the intervention of the statute, would, doubtless, have been lawful; but an act of exportation, from the force of the term, must be commenced here; and if done part on land, and part on sea, the authorities decide, that the admiralty cannot claim the jurisdiction. It is not made criminal to receive arms and ammunition at sea, but to export them from the United States, within which the offensive act must, therefore, originate. If, then, this is not a cause of Admiralty and Maritime jurisdiction, though it should be allowed to be a civil cause, still the trial ought to have been by jury. It may be proper to add, that the act of Congress (sect. 4.) expressly adopts in this case, the mode of prosecuting to recover the forfeitures and penalties incurred under the act for more efectually collecting the impost, etc. (passed the 4th of August, 1790, s. 67.) which declares that on filing a claim 'the court shall proceed to hear and determine the cause according to law:' but there is nothing in this provision, that can be construed to exclude a jury trial; any more than in the form of a commission of Oyer and Terminer, which empowers the Judges 'to hear and determine,' and yet they always hear and determine, as to the facts, through the medium of a jury; nor does the mere institution of a new mode of proceeding necessarily rescind and annul, every pre-existing process applicable to the same subject. If, upon the whole, there has been a mis-trial, and a representation should be presented to the proper department, the forfeiture would not be allowed to enrich the Treasury; but as a judicial question, it is more proper that the error should be judicially corrected. The Circuit Court ought to have remanded the cause to the District Court, taken in either of the views it exhibits: if it was a criminal cause, strictly speaking, it ought to have been remanded, because it had not been tried by a jury, and because the judgment of the District Court is, in such case, definitive: if it was a civil suit, but not of Admiralty or Maritime jurisdiction, it ought to have been remanded, because, in such case, the issue had not been tried by jury: And in either case, whether criminal or civil, this court has a superintending and efficient control over the judgments and decrees of the Circuit Court.
 
 
 8
 The Chief Justice informed the opposite counsel, that as the court did not feel any reason to change the opinion, which they had formed upon opening the cause, they would dispense with any further argument; and on the 11th of August, he pronounced the following judgment.
 
 
 9
 By the Court. We are perfectly satisfied upon the two points that have been agitated in this cause. In the first place, we think, that it is a cause of Admiralty and Maritime Jurisdiction. The exportation of arms and ammunition is, simply, the offence; and exportation is entirely a water transaction. It appears, indeed, on the face of the libel, to have commenced at Sandy Hook; which, certainly, must have been upon the water. In the next place, we are unanimously of opinion, that it is a civil cause: It is a process of the nature of a libel in rem; and does not, in any degree, touch the person of the offender.
 
 
 10
 In this view of the subject, it follows, of course, that no jury was necessary, as it was a civil cause; and that the appeal to the Circuit Court was regular, as it was a cause of Admiralty and Maritime jurisdiction. Therefore,
 
 
 11
 Let the decree of the Circuit Court be affirmed with costs.
 
 
 12
 But on opening the court the next day, THE CHIEF JUSTICE directed the words 'with costs' to be struck out of the entry, as there appeared to have been some cause for the prosecution. He observed, however, that, in doing this, the Court did not mean to be understood, as, at all, deciding the question, whether, in any case, they could award costs against the United States, but left it entirely open for future discussion.
 
 
 
 *
 The information was founded on the act of congress, passed the 22d May 1794, prohibiting, for one year ennsuing, the exportation of arms and ammunition.
 
 
 *
 The case having been opened, and some general principles stated by the attorney-general, on a preceding day, the court were led to suppose that he did not mean to enter into any farther discussion, and declared an opinion; but being afterwards informed, that, on account of the importance of the subject, a further argument was expected; they gave this opportunity.