(INSTANCE COURT.)

*The Ship Octavia.*—NICHOLLS *et al., Claimants.*

A question of fact under the Non-Intercourse Act of the 28th of June, 1809.

APPEAL from the decree of the circuit court for the Massachusetts district, affirming the decree of the district court, condemning said vessel.

This ship was seized in the port of Boston, in October, 1810; and the information alleges, that the ship, in March, 1810, departed from Charleston, S. C., bound for a foreign port, to wit, Liverpool in Great Britain, with a cargo of merchandise on board, without a clearance, and without having given the bond required by the Non-Intercourse Act of the 28th of June, 1809, ch. 9. s. 3. The claimants admitted, that the ship proceeded with her cargo (which consisted of cotton and rice) to Liverpool; but they alleged, that the ship originally sailed from Charleston, bound to Wiscasset, in the District of Maine, with an intention there to remain, until the Non-Intercourse Act should be repealed, and then to proceed to Liverpool. That by reason of bad winds and weather, the ship was retarded in her voyage, and on the 10th of May, 1810, while still bound to Wiscasset, she spoke with a ship from New-York, and was informed of the expiration of the Non-Intercourse Act, and thereupon changed her course, and

proceeded to Liverpool. The manifest states the
cargo to have been shipped by *sundries*, consigned
to Mr. P. Grant, *Boston.*

1816.
The
Octavia

The *Attorney General* and *Law* argued the case
for the appellees on the facts, and cited the case of
the Wasp,[a] which was an information under the same
section of the same act. They contended, that the
burthen of proof was thrown upon the claimant, in-
asmuch as the law requires a bond to be given, if
the ship was bound to a port *then* permitted, condi-
tioned that she should not go to a prohibited port.

*Dexter*, for the appellants and claimants, stated,
that the suit was not founded on the same act with that
in the case of the Samuel;[b] but that the same objec-
tion existed as to the form of the process. It is true,
the Judiciary Act of the 24th of September, 1789,
c. 20. s. 9., has declared, that certain causes shall be
causes of admiralty and maritime jurisdiction, but it
does not, therefore, follow, that a forfeiture created
by a new statute shall be enforced by the same pro-
cess. The arguments urged against it in the cases
subsequent to that of the Vengeance,[c] have always
been answered by the mere authority of that case.
But the decision in that case ought to be re-examined,
because it affects the right of trial by jury, and be-
cause the argument was very imperfect. The word
"including," in the judiciary act, ought to be con-
strued cumulatively. It provides, that the district

a 1 *Gallison*, 140.     b *Ante.* p. 9     3 *Dall.* 297.

1816.

The
Octavia.

courts shall " have exclusive original cognizance of all civil causes of admiralty and maritime jurisdiction, including all seizures under laws of impost, navigation, or trade, of the United States, where the seizures are made on waters which are navigable from the sea by vessels of ten or more tons burthen, within their respective districts, as well as upon the high seas," &c.    The presumption arising from the collective use of debt, information, and indictment, in the Non-Intercourse Act, is, that they relate to a common law jurisdiction.    The word *information* cannot be synonymous with *libel*, because the first is a common law, the second a civil law proceeding.    A common law proceeding may be applied by statute to admiralty suits.    The statute 28th Henry VIII. c. 15. prescribes a common law process (indictment) for offences triable in the admiralty.

[STORY, J.    That was the high commission court.]

*Dexter* answered, that he was aware of it; but that a suit may be a cause of admiralty and maritime jurisdiction, and yet triable by common law process.[d]

*d* Before the statute 28th Henry VIII. c. 15., the admiralty had a very extensive criminal jurisdiction, which seems to have been coeval with the very existence of the tribunal, in which it proceeded according to the civil law, and other its own peculiar codes; but by the process of *indictment* found by a grand jury, and a *capias* thereupon delivered by the admiral or his lieutenant, to the marshal of the court, or *the sheriff*.    See *Clerk's Praxis*, Roughton's Articles cited therein, 122. note. c. 16, 17.    *Exton*, 32.    *Selden de Dominio Maris*, 1. 2. c. 24. p. 209. 4 *Rob.* 73.    Note (*a*) The Rucker.    This criminal jurisdiction, independent of statutes, still

STORY, J., delivered the opinion of the court.

This case depends on a mere question of fact. After a careful examination of the evidence, the majority of the court are of opinion, that the decree of the circuit court ought to be affirmed. It is deemed unnecessary to enter into a formal statement of the grounds of this opinion, as it is principally founded upon the same reasoning which was adopted by the circuit court in the decree which is spread before us in the transcript of the record

Decree affirmed with costs.[e]

1816.

The Octavia.
Feb. 13th.

exists; and all offences within it, which are not otherwise provided for by positive law, are punishable by fine and imprisonment. See 4 *Black. Com.* 263. *Brown's Civ. & Adm. Law,* Appendix, No. 111. The statute 28th Henry VIII. c. 15., provides, that all treasons, felonies, &c., on the seas, or where the admiral hath jurisdiction, &c. shall be tried, &c., in the realm, as if done on land; and commissions under the great seal shall be directed to the admiral or his lieutenant, and three or four others, &c., to hear and determine such offences, after the course of the laws of this land for like offences done in the realm. And the jury shall be of the shire within the commission. Stat. 33d Geo. III. c. 66. Under this provision the sessions at the Old Bailey are now held, at which the judge of the High Court of Admiralty presides, and common law judges are included in the commission. But it is held, that this statute does not alter the nature of the offence, which shall still be determined by the civil law, but the manner of trial only. (*Hale's P. C.* 3 *Inst.* 112.)

e As the opinion of the court below is referred to for the grounds upon which its decree was affirmed, it may seem fit here to insert so much of that opinion as develops the principles and rules of evidence applied by the court in cases of this nature.

After stating the facts of this case, the learned judge proceeds: "Since I have had the honour to sit in this court I have prescribed to myself certain rules, by the application of which, my judgment, in cases of this nature, has been

1816.

The
Octavia.

uniformly governed. 1st. Where the claimants assume the *onus probandi* (as they do in this case) not to acquit the property, unless the defence be proved beyond a reasonable doubt.    2d. If the evidence of the claimants be clear and precisely in point, not to indulge in vague and indeterminate suspicions, but to pronounce an acquittal, unless that evidence be clouded with incredibility, or encountered by strong presumptions of *mala fides*, from the other circumstances of the case." He also alludes to the absence of documentary evidence to support the defence set up by the claimants as affording an example of the application of these rules, as well as of another rule equally important. " What strikes me as decisive against the defence is the entire absence of all documents respecting the cargo. Bills of lading, letters of advice, or general orders, must have existed. If the cargo had been destined for Boston only, there would not have been so much difficulty. But the defence shows its destination ultimately for Liverpool. Where, then, is the contract of affreightment, the bills of lading, the letters of advice, and the correspondence of the shippers, or of Mr. P. Grant? Can it be credible that, without any authority, the master, or part owner of the ship should, on their own responsibility, have gone to Liverpool, without orders or consignment? That from a mere vague knowledge of the wishes of the shippers, they should place at imminent risk the whole property, without written authority to colour their proceedings? There must have been papers. They are not produced. The affidavits of the shippers, of Mr. Grant, of the consignees in England, are not produced. What must be the conclusion from this general silence? It must be, that if produced, they would not support the asserted defence. At least, such is the judgment that both the common law and the admiralty law pronounces in cases of suppression of evidence."