**THE PACIFIC HEMLOCK.**
**THE PACIFIC REDWOOD.**
**THE PACIFIC CEDAR.**
**THE PACIFIC OAK.**
**THE PACIFIC FIR.**

**KRAUSS BROS. LUMBER CO. v. DIMON S. S. CORPORATION.**

Nos. 13120, 13117, 13090, 13093, 13105.

District Court, W. D. Washington, N. D.
Aug. 4, 1931.

intercoastal carrier moves similar cargo at lower rate, such lower rate to be applied." The libels were filed about seventeen months after the cargo was carried, delivered, and paid for. It is alleged the cargo was carried, the freight was paid, and that "at the same time * * * a regular intercoastal carrier * * * moved similar cargo from Seattle, Washington, to Boston, Massachusetts, at a lower rate. * * *" There is no allegation in the libel giving conditions under which this shipment was made, whether a regular coastal shipment, or whether a "distress" shipment. The freight upon the cargo was paid without protest. Exceptions to the libel are filed in each case: (a) Facts alleged are insufficient to constitute a cause of action; (b) do not constitute a cause of action within the admiralty and maritime jurisdiction; (c) there is no maritime lien and no jurisdiction in rem.

The court must first determine its jurisdiction. The Constitution (art. 3, § 2, par. 1) grants judicial power to the United States District Courts in all cases of admiralty and maritime jurisdiction. Originally, the admiralty jurisdiction was but another phrase for the power of the admiral, next in power to the monarch, and extended to nonadmiralty cases "beyond the sea." The ancient and time-honored privilege of admiralty (Edward's Ad. Juris. 17), Smart v. Wolf, 3 T. R. 348, does not obtain under our Constitution. English Stat. 2, Henry IV, c. 2, provides: "* * * Admirals shall not intermingle anything done in the realm but only of a thing done upon the sea." The added word "maritime" in our law restricts admiralty to maritime service. In The Eclipse, 135 U. S. 599, at page 608, 10 S. Ct. 873, 876, 34 L. Ed. 269, the court says: "The jurisdiction embraces all maritime contracts * * * and it depends, in cases of contract, upon the nature of the contract, and is limited to contracts, claims, and services purely maritime, and touching right and duties appertaining to commerce and navigation." People's Ferry Co. v. Beers, 61 U. S. (20 How.) 399, at page 401, 15 L. Ed. 961. Admiralty has not power to draw within its jurisdiction matters primarily nonmaritime. United Transport & Lighterage Co. v. N. Y. & B. T. L. (D. C.) 180 F. 902. Its jurisdiction is confined exclusively to maritime issues. The Ada (C. C. A.) 250 F. 194; Grant et al. v. Poillon et al., 61 U. S. (20 How.) 162, 15 L. Ed. 871. The libels are for money had and received, the contract of a special nature, for less charge on named contingency; the contin-

Hayden, Merritt, Summers & Bucey, of Seattle, Wash., for libelant.

Bogle, Bogle & Gates, of Seattle, Wash., for respondents and claimant.

NETERER, District Judge.

The three last-named cases were heretofore submitted and exceptions sustained. Petition for rehearing is filed. The first two cases are now submitted upon exceptions.

The libels are practically the same. Each seeks to recover an amount alleged to be due under a provision contained in a contract at a given rate of affreightment per thousand feet, with a provision "in the event regular

gency had not arisen and the freight was paid, and the essence of the contract now claimed is for repayment, and this is not maritime. Plummer v. Webb, Fed. Cas. No. 11,233, 4 Mason, 380. The fact that the contingent agreement was included in the charter party does not of itself make it a maritime contract. Keyser v. Blue Star S. S. Co. (C. C. A.) 91 F. 267.

 The ship was liable to safely deliver the cargo, and the cargo was liable to the ship for carriage. The Freeman v. Buckingham, 59 U. S. (18 How.) 182, 15 L. Ed. 341. There was a reciprocal pledge for service and compensation between the ship and the cargo. Bulkley v. Naumkeag S. C. Co., 66 U. S. (24 How.) 386, 16 L. Ed. 599; The Keokuk, 76 U. S. (9 Wall.) 517, 19 L. Ed. 744; The Maggie Hammond, 9 Wall. (76 U. S.) 435, 19 L. Ed. 772; The Belfast, 74 U. S. (7 Wall.) 624, 19 L. Ed. 266. The lien of the cargo owner upon the ship is limited by the corresponding and reciprocal right of the shipowner upon the cargo. The ship and cargo each discharged the maritime obligation; every act having relation to maritime service was fully performed. The fact that the contract contained a stipulation that upon contingency another rate should apply is not decisive, but rests on the inquiry: May the claim for rebate on the alternate rate be separably enforced? Compagnie Francaise de Navigation a Vapeur v. Bonnasse (C. C. A.) 19 F.(2d) 777. The liability of the ship for transportation and the liability of the cargo for affreightment do not differ in their nature and legal effect. The ship has a personality of her own, is competent to contract, is liable for her obligations and her torts. Tucker v. Alexandroff, 183 U. S. 424, at page 438, 22 S. Ct. 195, 46 L. Ed. 264. The cargo, as well, has a similar status, and, after the cargo is delivered, all claim of the ship on the cargo is ended, and any claim by reason of contract for increase of carriage charge on contingency, with the cargo owner, could not be impressed upon cargo, but only asserted against the owner, and by the same token, when maritime relation ended by delivery of the cargo and payment of the freight, all claim for repayment on the contract between owners of cargo and owners of the ship upon separable contract is not a lien upon the ship. It was only the right to lessen the ship's lien on cargo for carriage to the amount of the rebate agreed on while the relation between ship and cargo obtained, but on payment to the ship for the affreightment the owner alone is liable for the repayment on his con-

tract. A maritime lien is a necessary basis for an admiralty proceeding in rem, and may be prosecuted in any district where the offending vessel is found. The Commerce, 1 Black (66 U. S.) 574, 17 L. Ed. 107. It is a claim for secret lien, and would operate to the prejudice of general creditors, and is stricti juris. Osaka Shosen Kaisha v. Pacific Export Lumber Co., 260 U. S. 490, 43 S. Ct. 172, 67 L. Ed. 364.

A maritime lien can be effected only by some visible contact with, or occurrence relating to, the service of the ship, and must be a manifest and open, ocular, physical endeavor of maritime service which may serve as notice to the world of an existing claim. If the claims had been claimed as offset pro tanto to the carriage charge, before payment, admiralty no doubt would have drawn to it equitable principles and so decreed. New York Dock Co. v. The Poznan, 274 U. S. 117, 47 S. Ct. 482, 71 L. Ed. 955. The principle of hypothecation is the basis of a maritime lien, and the hypothecation cannot apply upon secret agreements between the owners, supra, for repayment of freight on certain contingencies and after ending of reciprocal relation between ship and cargo. The period of reciprocal relation between ship and cargo is from beginning and ending of the voyage—the receipt of cargo and the delivery of cargo. Vandewater v. Mills, 19 How. (60 U. S.) 82, 15 L. Ed. 554. Any status or relation ante or post maritime service on a separable stipulation is nonmaritime. Admiralty has no jurisdiction of a contract to procure marine insurance, Marquardt v. French (D. C.) 53 F. 603; Home Ins. Co. v. Merchants' Transp. Co. (C. C. A.) 16 F.(2d) 372; and by the same token it has no jurisdiction for repayment of carriage charge on the separable contract in issue on a contingent agreement between owners of ship and owners of cargo. In Israel v. Moore & McCormack Co. (D. C.) 295 F. 919, the master of the ship wrongfully exacted from the shipper carriage charges for cargo jettisoned, and therefore not delivered; it was a failure to safely deliver the cargo; jettison was the act of the ship by open, obvious conduct of its crew. The ship was liable for breach; it did not fulfill its promise. The instant claims are not predicated on any act of open, obvious conduct of the ship, but upon express contract between the owners of the cargo and the owner of the ship, which is separable.

In Church v. Shelton, 5 Fed. Cas. 674, No. 2,714, the master of the ship conspired with wreckers to strand his ship, and the owner of

the cargo paid large sums for salvage. Admiralty had jurisdiction. The bill of lading, founded on contract, was to convey safely the merchandise. The act of the master in stranding was open and obvious, and the owner and the ship were liable for the master's acts. The merchandise was not delivered, through the fraudulent acts of the master, whose acts were open and obvious, and it was a maritime service.

In Pillsbury Flour Mills Co. v. Interlake S. S. Co. (C. C. A.) 40 F.(2d) 439, the contract included holding the cargo in storage after transportation on the water and before delivery. The relation between the shipper and the carrier had not ended, and could not end until the cargo was delivered, and this was by special agreement between the owners of the cargo and the owner of the ship, to which the ship was necessarily a party, and, the relation between carrier and shipper not having ended by delivery, admiralty rightly assumed jurisdiction of the whole.

In The Oceano (D. C.) 148 F. 131, by stipulation in the charter party for advance freight to the master, which was to be deducted from the freight on delivery of the cargo, by mistake a part was not deducted, and the court held refusal to pay on the part of the owner for advance freight was a breach of the charter party, and not separable. The claim did not rest on a contingency, but obtained from the beginning, interwoven with acts of the master, ship, and cargo and shipper. No act of a third party was required to give life to the claim, like happening of a contingency. In the case at bar, no act of the master gave life to the claim, nor did the agreement between the owners of the ship and the owners of the cargo, but the act of another.

In principle, aside from the statute (section 24, subd. 3, Judicial Code, title 28 USCA § 41 (3), creating admiralty a prize court (enacted 1875 [18 Stat. 470], 1887 [24 Stat. 552], 1888 [25 Stat. 433], 1911 [36 Stat. 1091]), this action is not unlike an action for division of prize money under contract made on land and which is held not within admiralty jurisdiction. See Cases in Vice Admiralty and Admiralty by Judge Hough, The Oliver Cromwell (Castrid v. Waddell), page 167 (New York 1715–1758).

Each libel is in the nature of assumpsit upon express contract made on land prior to carriage of cargo for repayment on carriage charges which have been paid, and is separable and can be separably enforced, and the actions are not maritime. Admiralty has not jurisdiction.

The motions for rehearing are denied, and the exceptions to libels are sustained. An order dismissing the libels may on notice be presented.