THE STERLING.

UNION OIL CO. OF CALIFORNIA v. NEW ENGLAND FISH CO. et al. (HAUGEN et al., Interveners).

No. 13173.

District Court, W. D. Washington, N. D.

Nov. 21, 1932.

Kerr & McCord, S. N. Greenleaf, and Bronson, Jones & Bronson, all of Seattle, Wash., for claimants.

Newman H. Clark, of Seattle, Wash., for intervening libelants.

NETERER, District Judge.

The Sterling Fish company owned and operated the oil screw Sterling and the scow Sterling No. I. The scow Sterling No. I was anchored in Neah Bay, and was equipped with a cookhouse, etc., and her crew was engaged in icing fresh fish upon the scow. The fresh fish were obtained from fishermen pursuing such avocation on the fishing grounds tributary to the scow's anchorage. The oil screw Sterling had a cook and galley of its own. It supplied the scow with ice and took from the scow the iced fish to the market or warehouse at a place other than Neah Bay.

Anna Haugen was employed as cook on the scow Sterling No. I. Anderson was a member of the crew upon the scow. Haugen cooked and served meals for the crew of the scow, and also served meals on the scow for

the crew of the oil screw Sterling while it was unloading ice and loading fish.

It is agreed that the Sterling Fish Company is indebted to Anna Haugen for wages in the sum of $82.83. Anderson assisted in unloading ice from the oil screw Sterling and in loading onto the oil screw Sterling the iced fish, and there is due to him the sum of $75 for such work. He worked about half of his time in this service. Each claims a lien upon the oil screw Sterling for the unpaid wage.

In The Pacific Hemlock, 53 F.(2d) 492, at page 494, this court said: "A maritime lien can be effected only by some visible contact with, or occurrence relating to, the service of the ship, and must be a manifest and open, ocular, physical endeavor of maritime service which may serve as notice to the world of an existing claim."

Haugen rendered no service upon the oil screw Sterling. There is no open or obvious challenge to the world of any right or claim to this ship. The fact that the oil screw Sterling and the scow Sterling No. I were owned by the same concern and operating in different avenues, the activity of each contributing to a common result, does not place them in the relation of an effective instrumentality. Each was a distinct instrumentality. And Haugen in her employment upon the scow can have no lien upon the oil screw Sterling. Her right of lien is vested in the scow Sterling No. I. Anderson being employed in the relation of a seaman on the oil screw Sterling, when he aided in taking on and discharging cargo, is differently related, and his contact and activity was open and obvious, and he has a lien for the wage unpaid for such service.

While the scow and the ship were used in conjunction, each rendering service in the icing and packing enterprise, that does not bring them together as an effective instrumentality. The scow was not engaged in navigation. It was an instrumentality at anchorage; its activity was independent of navigation, while the oil screw Sterling was engaged in navigation in carrying cargo to and from the scow Sterling No. I. Each activity was separate and distinct, the activity of one beginning where the other ended, and this relation does not give to a seaman, of which the cook is one on the scow, a lien upon the oil screw Sterling for service performed on the scow, although seamen from the oil screw Sterling were accommodated to meals upon the scow at times while the cargo was discharged and taken.

The case is entirely distinct from one where trips are made by a launch or tug with a barge or scow in tow between two ports; in such case, the two are one instrumentality. The Seven Bells (C. C. A.) 241 F. 43; The Bathgate (D. C.) 19 F.(2d) 663; Sacramento Navigation Co. v. Salz, 273 U. S. 326, 47 S. Ct. 368, 71 L. Ed. 663; Tice Towing Line v. James McWilliams Blue Line (D. C.) 51 F.(2d) 243, 249.

An order may be presented in harmony herewith.