## UNITED STATES v. ATLANTIC MUTUAL INSURANCE CO.

No. 21. Argued October 18, 1935.—Decided May 25, 1936.

*Mr. J. Frank Staley,* with whom *Solicitor General Reed, Assistant Attorney General MacLean,* and *Mr. Paul A. Sweeney* were on the brief, for the United States.

*Mr. J. M. Richardson Lyeth* for respondent.

MR. JUSTICE VAN DEVANTER delivered the opinion of the Court.

This was a suit to obtain a contribution in general average by reason of the sacrifice of part of a ship's cargo for the benefit of the ship and cargo as a whole. The Court of Claims gave judgment for the claimant and the case is here on certiorari. The material facts, as shown by the findings below, are as follows:

In 1918 the *Logan,* an army transport owned and operated by the United States, left San Francisco for Manila with a cargo consisting of military supplies belonging to the United States, certain property belonging to the government of the Philippine Islands and its railroad, and other property belonging in large part to the American Red Cross and in lesser part to officers of the United States Army, none of which was being transported for

hire. During the voyage fire broke out in the hold from a cause free from negligence, and to prevent a loss of both vessel and cargo the master caused part of the cargo to be jettisoned and water to be let into the hold, whereby other parts of the cargo were damaged. After the fire was extinguished the transport continued the voyage and arrived at the port of destination January 19, 1919. All that remained of the cargo was then discharged and, with the master's assent, was delivered to its owners without obtaining from them any bond to secure payment of general average.

The part of the cargo belonging to the Philippine government and its railroad was insured against marine perils, including fire, by policies obtained before the voyage was begun. Substantial portions of this property were jettisoned or damaged at the time of the fire. April 12, 1921, the underwriter, in compliance with the policies, paid to the Philippine government and its railroad the amounts of their respective losses, and thereby became subrogated to their rights, if any, under the maritime rule respecting general average.

May 15, 1921, the underwriter presented to the War Department a claim for general average contribution based on the facts here stated, and the claim was denied. But the Judge Advocate General disapproved that ruling and gave an opinion that the claim was well grounded. Thereafter, on August 22, 1922, an administrative officer in the army transport service transmitted the files relating to the claim to a company doing business as an average adjuster and insurance broker at San Francisco and requested that the adjuster prepare "a statement of general average in order that the responsibility of the various parties concerned may be determined." The adjuster accepted that task and completed and rendered such a statement December 31, 1926. In this statement the adjuster computed the net contribu-

tion to be made by the United States to the underwriter by reason of the latter's subrogation to the rights of the Philippine government and its railroad at something over $40,000; and also computed the contributions to be made to the underwriter by other cargo owners. On March 28, 1928, the accounting officers of the United States denied the claim for contribution, and on December 10, 1928, the Comptroller General, on review, sustained that ruling. The claimant brought the present suit in the Court of Claims February 18, 1929.

One of the defenses interposed by the government and rejected by the court is that the claim had become completely barred before the suit was begun. The statute [1] invoked by this defense declares:

"Every claim against the United States cognizable by the Court of Claims shall be forever barred unless the petition setting forth a statement thereof is filed in the court . . . within six years after the claim first accrues."

The government contends that the claim first accrued on January 19, 1919, when the transport reached its destination and delivered what remained of the cargo to the cargo owners. On the other hand, the claimant insists the claim first accrued on December 31, 1926, when the adjuster completed and rendered the general average statement. The court rejected the government's contention and sustained that of the claimant. In this we think it erred.

The court recognized that the transport, had it been privately owned, would have become subject to a suit *in rem* for contribution in general average upon its arrival at destination and the delivery of the cargo, but held that as the transport was government owned and in the public service such a suit would not lie against it. We assent to this, but think the accrual of the right to contri-

---

[1] U. S. C., Title 28, § 262.

bution did not depend upon whether it could be enforced by a suit *in rem* against the ship. Such a right accrues if and when all the elements essential to its existence are present, regardless of whether the appropriate means of enforcement be a suit *in rem* or a suit *in personam.* In this instance, as we shall show, a suit of the latter class was the appropriate means.

The law of general average is an ancient feature of the maritime law and proceeds on the equitable principle that that which is sacrificed by one for the benefit of all in the course of a common venture at sea should be made good by the contribution of all.[2]

Various means of enforcing such contribution have become well recognized, such as a suit *in rem* in admiralty against ship or cargo, a suit *in personam* in admiralty against ship owner or cargo owner,[3] and an action at law[4] or a suit in equity[5] against ship owner or cargo owner. Save for exceptional rulings afterwards disapproved, the courts in dealing with such suits and actions have regarded the right to contribution as accruing and becoming enforceable upon the arrival of the ship at the port of destination and the delivery of the cargo. In reason the rule could not well be otherwise, for every element of the right is then present. That the amount of the required

[2] *Barnard* v. *Adams,* 10 How. 270, 303; *Ralli* v. *Troop,* 157 U. S. 386; *Simonds* v. *White,* 2 Barn. & Cress. 805, 811.

[3] *Bark San Fernando* v. *Jackson,* 12 Fed. 341; *The Emilia S. De Perez,* 22 F. (2d) 585, 586; *Det Forenede Dampskibs Selskab* v. *Insurance Company of North America,* 31 F. (2d) 658 (certiorari denied, 280 U. S. 571); *Kohler & Chase* v. *United American Lines,* 60 F. (2d) 530. And see *Insurance Co.* v. *Dunham,* 11 Wall. 1; 1 Benedict on Admiralty, 5th ed. § 98.

[4] *Birkley* v. *Presgrave,* 1 East 220; *Price* v. *Noble,* 4 Taunt. 123; *Dobson* v, *Wilson,* 3 Camp. 480; *Strang, Steel & Co.* v. *A. Scott & Co.,* L. R. 14 App. Cas. 601, 606–607.

[5] *Sturgess* v. *Cary,* Fed. Cas. No. 13,572; 1 Story's Equity Jur. 14th ed. §§ 661 et seq.

contribution may then be unliquidated is no obstacle, for in proper sequence liquidation comes after accrual, and can be made in the suit or action wherein the right is presented for adjudication. In this regard a claim for contribution does not differ from many others where at the time of accrual the recoverable damages or amount due remains unliquidated. As was well said in a related case,[6] "The law is familiar enough in actions of tort and in many actions in contract, with liabilities which are presently due, although unliquidated."

The United States is not suable without its assent, and therefore a suit *in personam* against it as the owner of the vessel needed the support of a permissive statute. But there is such a statute,[7] which has been long in force. It in direct terms invests the Court of Claims with jurisdiction to hear and determine all claims against the United States founded—

"upon any contract, express or implied, with the Government of the United States, or for damages, liquidated or unliquidated, in cases not sounding in tort, in respect of which claims the party would be entitled to redress against the United States either in a court of law, equity, or admiralty if the United States were suable."

It is under this statute that claims against the United States for general average contribution are brought and adjudicated in the Court of Claims. Obviously the statute contemplates that a claim may accrue and be sued on even though the damages sought be unliquidated.

For these reasons we think it quite plain that the present claim accrued January 19, 1919, when the ship reached its destination and the cargo was delivered.

---

[6] *Det Forenede Dampskibs Selskab* v. *Insurance Co. of North America*, 31 F. (2d) 658, 660 (certiorari denied, 280 U. S. 571).

[7] U. S. C., Title 28, § 250 (1).

The court below attached much importance to the statement in general average made by the adjuster at the request of an administrative officer in the army transport service. Indeed, the court treated the statement as being "in the nature of an account stated," and ruled that the right to contribution accrued when it was rendered. In this we think the court misconceived the functions of the adjuster and the nature of the statement. The adjuster was not an arbitrator,[8] nor was the statement anything more than a provisional estimate and calculation which his principal, the owner, was free to adopt or to put aside. In the absence of some stipulation on the subject, and there was none, his function was only that of aiding or assisting the owner in gathering and stating data and making appropriate calculations as a suggested basis for an adjustment to be made by the owner, or under the owner's direction. It is not shown that the owner adopted the statement or put it forth as an authorized statement. In this situation the statement had no binding force as a stated account or otherwise. As was explained by Lord Herschell when speaking for the Judicial Committee of the Privy Council in *Wavertree Sailing Ship Co.* v. *Love*, L. R., (1897) App. Cas. 373—

"The right to receive and the obligation to make general average contribution existed long before any class of persons devoted themselves as their calling to the preparation of average statements. It was formerly, according to Lord Tenterden, the practice to employ an insurance broker for the purpose. The shipowner was not bound to employ a member of any particular class of persons or indeed to employ any one at all. He might if he pleased make out his own average statement, and he may do the same at the present time if so minded. If he en-

---

[8] *The Alpin*, 23 Fed. 815, 819; *The Santa Anna Maria*, 49 Fed. 878, 879.

gages the services of an average stater, it is merely as a matter of business convenience on his part."

. What we have said suffices to show that the claim accrued more than six years before the suit was begun, and therefore was barred by the statute.

*Judgment reversed.*