**AMERICAN EASTERN CORPORATION, Libelant,**

v.

**The UNITED STATES of America, Respondent.**

United States District Court
S. D. New York.

June 10, 1955.

Motion to Amend Libel Denied
Aug. 19, 1955.

**12**

Radner, Zito, Kominers & Fort, Washington, D. C. and Haight, Gardner, Poor & Havens, New York City, for libelant.

J. Edward Lumbard, Lloyd F. MacMahon, U. S. Attys., New York City, for respondent. Benjamin H. Berman, New York City, of counsel.

WALSH, District Judge.

Libelant here seeks to recover from respondent alleged overpayments made pursuant to its charter of two government-owned vessels. Respondent excepts to the libel as barred by the statute of limitations. The exception is sustained.

The suit being under the Suits in Admiralty Act, 46 U.S.C.A. § 741 et seq.,

there is no dispute as to the period of the statute. It is two years. 46 U.S.C.A. § 745. The question is when the cause of action arose, when the libelant could first have maintained an action and been granted complete relief.

The controversy concerns "additional charter hire", an amount over and above basic charter hire, based upon profits earned under the charter. The libel alleges that this charter provision is in conflict with the statute which authorized the charter (Par. 6); and that respondent withheld overpayments by libelant in violation of both the statute and the charter (Pars. 7–10).

The immediate claim of libelant is that "cumulative net voyage profit", upon which the additional charter hire is computed, permits the carrying back of subsequent losses over the full period of the charter to offset earlier profits. Respondent contends that the language of the charter requires that the "cumulative net voyage profit" be computed for each calendar year, rather than averaged over the life of the charter.[1]

We are not concerned with the correctness of the rival contentions but whether the claim is time-barred. On this question we are handicapped by the vagueness of the libel which, in disregard of the jurisdictional need for allegations showing the timeliness of actions under the Suits in Admiralty Act,[2] evades an answer to almost all precise inquiries. Exactly, when or how the alleged claim came into being is not expressed in words but, apparently, by a cryptic exhibit attached thereto, entitled "Final Accounting under Shipsalesdemise, 303 Contract MCc–42706". The readily understandable portion of the libel deals only with generalities: that the charter was executed "notwithstanding" the "mandatory" provisions of the statute; that respondent "refused" to permit the continuation of profits and losses over the period of the charter;—it leaves to be gleaned from the exhibit, if at all, whether there were profits, when they were accounted for, in what respect improperly, what was paid, whether there were overpayments, and when libelant thinks it should have gotten something back.

Interpreting the exhibit as best I can, aided by Maritime Commission regulations and correspondence submitted at argument, the facts seem to be as follows:

| | |
|---|---|
| 1946 | Congress authorized the charter of government owned vessels under the Merchant Ship Sales Act of 1946 (60 Stat. 41, c. 82, § 5, 50 U.S.C.A.App. § 1738). This act incorporated by reference the provisions of the Merchant Marine Act of 1936 which provide for additional charter hire if charterer makes a profit in excess of ten percent on capital involved. (49 Stat. 2010, c. 858, title VII, § 709, 46 U.S.C.A. § 1199). |
| March 4, 1947 | The charter in question was executed between libelant and respondent. Clause 13 provided for additional charter hire. The charter covered two vessels. |
| April 10, 1947 –June 16, 1948 | Libelant operated the vessels. It paid respondent monthly amounts based on tentative estimate of additional charter hire, in accordance with procedure provided by Maritime Commission regulations. |

1. There is also a need for separate accounting as to foreign trade and domestic trade. 50 U.S.C.A.Appendix, § 1738(d).

2. Corporation of Royal Exch. Assur. v. United States, 2 Cir., 1935, 75 F.2d 478.

April 1, 1947 –Oct. 31, 1947 — Libelant earned profit subject to additional charter hire. This profit was accounted for as of the calendar year 1947. As a result libelant was subject to the additional charter hire in question, for that accounting period.

Oct. 1, 1947 –June 30, 1948 — Libelant incurred a heavy loss which was accounted for separately.[3] It is this loss which libelant seeks to offset against the 1947 profit.

June 16, 1948 — Last vessel returned to respondent.

Feb. 21, 1950 — Maritime Commission promulgated regulations for final accounting, which expressly assert that profits may not be offset by losses incurred in subsequent accounting periods.

Sept. 14, 1951 — Libelant submitted its final accounting demanding return of overpayments in the amount of $10,187.12 but not making any claim upon the basis of carrying back subsequent losses, the only claim advanced in this action.

Nov. 29, 1951 — Respondent allowed the claim of libelant to the extent of $8,436.40.

Mar. 19, 1952 — Respondent's Comptroller approved refund in this amount subject to reservations for

(a) Applicable items recorded subsequent to June 30, 1951.

(b) The net overage or shortage of expendable equipment.

(c) Any errors or omissions later developed.

Apr. 25, 1952 — Respondent repaid to libelant $8,436.40, thus allowed.

Nov. 18, 1952 — Libelant made a further claim under (b) "expendable equipment", demanding additional refund of $603.60.

Feb. 18, 1953 — Additional refund of $603.60 approved.

Mar. 12, 1953 — Respondent paid libelant $603.60.

Feb. 12, 1955 — Further claim for overpayment was submitted, for the first time claiming an overpayment on the basis alleged in this action.

Feb. 16, 1955 — Present libel filed.

To the extent that libelant claims under the charter, its claim had arisen by June 16, 1948, when it returned the last of its ships to respondent. At that point all facts upon which its claim is based had occurred. Profits had been earned; losses incurred; preliminary payments had been paid. Thereafter it was merely a matter of computation to determine the amount of excess preliminary payments to which libelant was entitled. Delay in computation on the hope that respondent will compute upon the basis libelant believes correct does not toll the statute. Cf. Corporation of

---

**3.** Neither the libel nor counsel suggest how the periods for accounting were fixed or why the loss for the last three months of 1947 did not offset the profit earned earlier in the year. Apparently this resulted from the statutorily required segregation between foreign trade and domestic trade, 50 U.S.C.A.App. § 1738(d). Yet counsel for both parties argued that the segregation resulted from the requirement for periodic accounting.

Royal Exch. Assur. v. United States, 2 Cir., 75 F.2d 478, 480; United States v. Sligh, 9 Cir., 24 F.2d 636, 638, reversed on other grounds 1928, 277 U.S. 582, 48 S.Ct. 600, 72 L.Ed. 998.

There was no open account between the parties as contended by libelant, wherein the claim arises with the last entry because previous entries are regarded as offsets to each other. Here there was no two-way trade but merely a one-way account for charter-hire with periodic payments. See Spring v. Gray, 1832, 6 Pet. 151, 164, 31 U.S. 151, 164, 8 L.Ed. 352. The complexity of the computation of these payments did not alter the nature of the account.

No provision of the statute or charter required libelant to await the promulgation of regulations for final accounting before commencing its action. If it had in fact overpaid and was entitled to return payments under the charter no regulation of the Commission could bar the right and none was necessary to round it out.[4] Neither was it necessary for libelant to await the outcome of claims presented through administrative channels. Cohen, Goldman & Co. v. United States, 1933, 77 Ct.Cl. 713, 730, certiorari denied 1933, 290 U.S. 681, 54 S.Ct. 119, 78 L.Ed. 587; Moriarty, Inc., v. United States, 1942, 97 Ct.Cl. 338, 339;

Withers v. United States, 1930, 69 Ct.Cl. 584, 587.

To the extent libelant claims for money had and received, its claim was mature when respondent, through the Maritime Commission's regulations for final accounting, unequivocally asserted its intent to withhold the money now claimed by libelant. These regulations were promulgated on February 21, 1950. The outline of procedure incorporated therein expressly stated that profits could not be offset by losses incurred in subsequent accounting periods. The language is as follows:

"In providing for the calculation of additional charter hire based on the *cumulative* net voyage profit of the Charterer, Clause 13 of Part II of Shipsalesdemise 303 provides also that such *cumulative* net profit so accounted for shall not be included in the calculation of cumulative net profit in any subsequent year or period. Pursuant to these provisions of the bareboat charter agreements, *only* deficiencies in net voyage profits may be carried forward, and then *only* under the following conditions:" (Emphasis in original) 46 C.F.R. § 299.37–4(C) (2).

More than two years have run since the promulgation of this regulation.[5]

---

4. Cases such as Board of Commissioners of Oklahoma County v. Board of Finance, 10 Cir., 1938, 100 F.2d 766, 769 and Denver-Greeley Irr. Dist. v. McNeil, 10 Cir., 1936, 80 F.2d 929, 931, containing statements that the period of limitations will not run during the period when an obligation is uncollectible because of defendant's failure to establish a fund for their payment, are distinguishable because under the terms of the obligations, as construed by the court, there was no right to recover until the fund was collected. (The possibility of mandamus at an earlier date was not discussed.) Even if they were applicable by analogy on the theory that respondent could not take advantage of its delay in promulgating regulations for final accounting, the statute of limitations would commence to run with the promulgation of those regulations on Feb. 21, 1950. Similarly, Bellingham Securities Syndi-

cate v. Bellingham Coal Mines, 13 Wash. 2d 370, 125 P.2d 668, 678, which relates to contingencies to be resolved before the amount of the claim can be known, is distinguishable. Here there was no contingency which could occur after the return of the vessels which would affect the right to recover or the amount of the recovery. Again, however, even if the promulgation of the regulation · for final accounting be considered such a contingency, the statute began to run from the date of promulgation, Feb. 21, 1950.

5. To round out the consistency of respondent's position, even the regulations for *preliminary* determination of additional charter hire also expressly forbade the carrying back of subsequent losses in the computation of the estimates upon which monthly payments were made during the life of the charter.

Libelant asserts that respondent's position was not unequivocal because of certain reservations in other provisions of the procedure for final accounting reserving the Commission's right to deviate from its formula for the calculation and allocation of capital and income where necessary to avoid an inequity. This does not establish that the regulations were in any sense tentative. This reservation was inherent in the complexity of the subject matter, the inability to prescribe a formula which would do justice in every case. It was not the deferment of the interpretation of the charter. Further, the matter affected by such reservations did not concern the basis for the present claim and, in any event, the reservations were of such a general nature that they could not diffuse the effect of the precisely expressed proscription against offsetting profits by subsequent losses.

Libelant might also contend that it was unable to determine whether its present claim was more than academic because of reservations in the provisions of charter clause 22 for the computations of "net voyage profit", "gross income", "fair and reasonable overhead" and "capital necessarily employed" which were, in turn, necessary to the determination of additional charter hire. In theory it might have believed that the 1947 profit, which it is trying to offset, could be otherwise wiped out by final recomputation of these factors and thus make its present claim unnecessary. Such a possibility, which would be no more than a hope, of course could not toll the statute. Even this bare hope would have been dispelled when libelant did file its final accounting on September 14, 1951, showing the existence of a substantial profit for this period.

The labyrinthine aspects of the charter and regulations which libelant has seen fit to exaggerate are really only superficial. They are to be expected in any administrative attempt to deal with a complex subject matter on a mass scale. Care must be taken not to permit their seeming complexity to confuse the elementary simplicity of the dealings between the parties.

The exceptive allegations are sustained.

### On Motion to Amend Libel.

After exceptive allegations to the original libel had been sustained and the claim herein held time-barred, libelant has moved to amend its libel. The prior determination was not limited to the form of the original libel. At the invitation of both parties, the court also considered the correspondence and maritime administration regulations which were handed up at argument.

The proposed amended libel does not overcome the defects as to which the exceptive allegations were sustained. Although the allegations in the proposed new Articles Sixth and Seventh regarding the addendum to the original charter explain the basis of libelant's claim more clearly than libelant's counsel was able to do at the original argument, and remove uncertainties as to underlying facts pointed out in the court's original opinion, they would not bring the claim within the two-year period of the statute. The addendum there alleged was executed, and all facts relating to the claim based upon it occurred, more than two years before the commencement of the action. Whatever rights libelant had accrued either before the return of the ships or the promulgation of the Commission's first regulations for accounting.

The conclusory allegation contained in Article Eighth that the determination of all controversies was reserved until the completion of final audit of all items by the Commission, is a conclusion of law

Although, because of the tentative nature of the preliminary estimates it is not claimed that they brought libellant's cause of action to maturity, nevertheless they do show that libelant had no reason to be taken by surprise and that the position of respondent in interposing the bar of the statute of limitations is in no sense unconscionable.

and a conclusion contrary to that reached by the court upon the underlying correspondence. Libelant cannot overcome the force of the court's earlier determination that the claims arose prior to the two year statutory period by merely adding to the libel an allegation of the legal conclusion that they did not.

Under these circumstances, the motion to amend the libel is denied.