**SWORD LINE, Inc., Libelant-Appellant,**

v.

**UNITED STATES of America, Respondent-Appellee.**

**No. 160, Docket 23723.**

United States Court of Appeals Second Circuit.

Petition Filed Jan. 18, 1956.

Decided Feb. 24, 1956.

Hand, Circuit Judge, dissented in part.

Theodore J. Breitwieser, New York City, for libelant-appellant.

Warren E. Burger, Asst. Atty. Gen., Leavenworth Colby, Chief, Admiralty & Shipping Section, Dept. of Justice, Washington, D. C., Benjamin H. Berman, Atty., Admiralty & Shipping Section, Dept. of Justice, New York City, and Paul W. Williams, U. S. Atty. for Southern Dist. of New York, New York City, for respondent-appellee.

Before CLARK, Chief Judge, and HAND and WATERMAN, Circuit Judges.

CLARK, Chief Judge.

Though interesting and important, the further material supplied us for the first time on rehearing does not convince us of any error of law in our decision of December 14, 1955, 228 F.2d 344. But since this material is important in itself and does indicate wider reaches to the issues involved than we had known, it seems desirable to cite it here; and because Judge WATERMAN and I take a slightly different approach from Judge HAND, we ought to avoid any chance of confusion by stating our views more explicitly, though Judge HAND was perfectly fair in his opinion to our divergencies.

This was a libel in admiralty in quasi contract for alleged overpayment of charter hire for government merchant vessels. We held that admiralty had jurisdiction, that the claim was time barred, and that additionally it was also barred by a release and compromise with the government effected by a confirmed plan in completed arrangement proceedings of the Sword Line as debtor. At that time libelant had expressly accepted admiralty jurisdiction, leading to the government's somewhat perfunctory notation of jurisdiction, with a formal citation or two; but nevertheless we raised the question at the argument and necessarily considered it with some care, as was our duty. Though our conclusion accorded with that then held by counsel, it obviously suggested to libelant a point it had overlooked; for now the real issue on this rehearing has centered upon libelant's claim vigorously pressed that admiralty lacked jurisdiction and that we had overlooked relevant authorities in holding otherwise.

While the other two issues were also reargued, there is nothing further really to be said on them. We are still all agreed that the release in the Plan of Arrangement ended all claim by libelant; the old Latin maxim *expressio unius* cannot be stressed to defeat the very obvious intent of the parties, as we pointed out before. As to the statute of limitations, the whole point was whether the

two-year period dated from the time of the acts involved, namely, the overpayments, or only from a later audit provided for in Clause 13 of the charter party. While Judge HAND felt that under the circumstances the audit was necessary to start the time running, we thought the authorities required the contrary view. See, e. g., United States v. Atlantic Mut. Ins. Co., 298 U.S. 483, 56 S.Ct. 889, 80 L. Ed. 1296. There is nothing to the point that payment of an unearmarked portion of the agreed-upon compromise of the government's four million dollar claim in the arrangement proceedings started the time running anew. And so we turn to the interesting and important question of admiralty jurisdiction.

The problem arises because earlier cases in this circuit and elsewhere, cited in our original opinion, had ruled that admiralty had no jurisdiction in quasi contract. The general thesis was that such action arose out of an implied contract and that such implied contract was collateral to any maritime contract, such as the one here for charter hire, and was not within the purview of admiralty. Part of the supporting rationale was that this form of remedy was really an equitable one and that admiralty had no jurisdiction over equity. The theory was brilliantly criticized, see, e. g., Chandler, Quasi Contractual Relief in Admiralty, 27 Mich.L.Rev. 23; Morrison, The Remedial Powers of the Admiralty, 43 Yale L.J. 1; Robinson on Admiralty 197–200 (1939), and, being of somewhat doubtful character, was not followed so consistently in the cases as to leave a line of clear demarcation of its aegis. In fact, the rationale had little to commend it even on its own ground, for admiralty does resort to and employ equitable principles rather widely. See discussion by Mr. Justice Frankfurter in Swift & Co. Packers v. Compania Colombiana Del Caribe, S.A., 339 U.S. 684, 689–696, 70 S.Ct. 861, 94 L.Ed. 1206, 19 A.L.R.2d 630, citing eminent authority. And the ancient remedy in quasi contracts, whatever its origin or slant, was distinctly not a proceeding in equity, but was the very means historically of getting into the nonchancery courts. Stone v. White, 301 U.S. 532, 57 S.Ct. 851, 81 L.Ed. 1265; Moses v. Macferlan, 2 Burr. 1005, 97 Eng.Rep. 676 (K.B. 1760); Ames, The History of Assumpsit, 2 Harv.L.Rev. 53, Lectures on Legal History 129 (1913).

Moreover, as these and other well-known authorities show, the existence of a contract, implied in law, is a pleasant, if productive, fiction. Actually recovery is based upon principles of justice and good conscience; and it is fictitious to think of some collateral nonmaritime implied contract as even existing, not to speak of controlling. In truth this is a refund of maritime payments originally enforceable in admiralty; there is no good reason for holding that the court which would decree the payment in the first instance should not decree the repayment which the admiralty law now requires. Logic, as well as convenience, dictates such jurisdiction, rather than the discovery of some narrow distinction to send a litigant elsewhere for perhaps a part of an entire claim. For certainly the claim, together with a natural counterclaim or offset, should properly come up in the same litigation without dismemberment and splitting into two lawsuits separately considered.

Against this background the views of the Supreme Court are of course most pertinent. In Krauss Bros. Lumber Co. v. Dimon S. S. Corp., 290 U.S. 117, 54 S. Ct. 105, 78 L.Ed. 216, that Court held that recovery of an admiralty overcharge there enforced by lien against a vessel was properly had in the admiralty; and in the course of the discussion it minimized the form of recovery, saying—in addition to the quotation made in our original opinion—in answer to the claim that "the demand is upon a cause of action for money had and received, which lies only at common law and not in admiralty," that "Admiralty is not concerned with the form of the action, but with its substance." 290 U.S. at page 124, 54 S.Ct. at page 107. Hence this case is taken quite generally by commentators as overruling the earlier line of

cases barring quasi contractual claims in admiralty. See, e. g., 23 Calif.L.Rev. 343; 34 Col.L.Rev. 358; 47 Harv.L.Rev. 519; 43 Yale L.J. 506; Robinson, "Contract" Jurisdiction in Admiralty, 10 Tulane L.Rev. 359, 396; Robinson on Admiralty, supra 200, n. 173. The form of the remedy there enforced, a lien *in rem,* would not seem to suggest any point of distinction; the opportunity to seize a vessel does not of itself transform a land to a maritime cause; and actually *in personam* jurisdiction had there already been upheld in the decision of the Ninth Circuit below, reversing the district court's outright dismissal. See The Pacific Cedar, 9 Cir., 61 F.2d 187, reversing The Pacific Hemlock, D.C.W.D. Wash., 53 F.2d 492, and which is itself reversed only on its dismissal of the libel *in rem,* the sole issue before the Supreme Court.

It is true, as Judge HAND points out, that Justice Stone did find a breach of the maritime contract in the overcharge; and hence Judge HAND has limited his agreement with us that jurisdiction obtains to the finding of such a breach as a prerequisite. But we think this limitation is difficult to work out in any practical sense and may bring back the kind of arbitrary restriction which the Krauss case wiped out. This was stated not as a condition of decision in the Krauss case, but only as a fact illustrating the narrowness of a distinction that the original charter party may be in admiralty, while refund of an exaction under it may not. So Justice Stone, in referring to the objection that the cause of action lies only at common law, and not in admiralty, went on to say: "The

objection applies with equal force to the liens allowed for excess freight, payment of which was procured by fraud or duress, or for freight paid in advance where the voyage was abandoned after the ship was loaded." It was at this point that he said that admiralty is not concerned with the form of the action, but with its substance, as we quoted above.

In all these cases it may be broadly true that the original admiralty charter was at the base of the case. But from the standpoint of recovery, the action is not for its breach, but for a debt, i. e., the refund due in good conscience. So in our present case, while the claim is one for overpayment beyond the charter hire, nevertheless the original charter is but a first step, being supplemented by the two further and important steps, first, the modification of the contract by the express terms of an extensive statute and, second, the government's detailed analysis and application of the statutory modification. We think it sounder, and more in accordance with the nature of admiralty, to rest upon the inherent maritime character of the underlying transaction, rather than upon an attempt to force this claim into the mold of a breach of contract. This broader approach also answers various aspects of the libelant's present contention, such as that admiralty jurisdiction cannot rest upon a claim on a statute or must concern a single definite vessel. Such limitations are contrary to the real spirit of admiralty, and actually have not been followed in various situations, of which some examples are collected in the footnote.[1] These all support, often without explicit analysis,

**1.** Selected examples may include United States v. La Vengeance, 3 Dall. 297, 300, 3 U.S. 297, 300, 1 L.Ed. 610, libel for a statutory penalty involving export of arms, "a water transaction"; Hobart v. Drogan (The Hope), 10 Pet. 108, 119, 120, 35 U.S. 108, 119, 120, 9 L.Ed. 363, libel on a state statute for compulsory pilotage; Ex parte McNiel, 13 Wall. 236, 242, 80 U.S. 236, 242, 20 L.Ed. 624, a similar case; The J. E. Rumbell, 148 U.S. 1, 12, 13 S.Ct. 498, 37 L.Ed. 345,

libel on a state statute giving a lien for a maritime claim—the admiralty jurisdiction is exclusive; Allanwilde Transport Corp. v. Vacuum Oil Co., 248 U.S. 377, 39 S.Ct. 147, 63 L.Ed. 312, 3 A.L.R. 15 (with two companion cases), libel for refund of prepaid freight; Globe & Rutgers Fire Ins. Co. v. United States, 2 Cir., 105 F.2d 160, certiorari denied 308 U.S. 611, 60 S.Ct. 175, 84 L.Ed. 511, the same; The Harriman, 9 Wall. 161, 174, 76 U.S. 161, 174, 19 L.Ed. 629, the

admiralty jurisdiction over these claims so basically and intimately intertwined with our vast shipping and maritime interests.

There are two comparatively recent cases in our circuit which follow its older restriction upon admiralty, viz., Silva v. Bankers Commercial Corp., 2 Cir., 163 F.2d 602, by dictum, and Archawski v. Hanioti, 2 Cir., 223 F.2d 406, by decision. In both these, however, it appears that the Krauss case was not cited or brought to the attention of the court, just as the Archawski case was not brought to our attention on the original argument. Now we learn also that in the Archawski case certiorari has been granted upon this issue, 350 U.S. 872, 76 S.Ct. 120, which will soon be argued in the Supreme Court; that the same issue was extensively argued in the Court of Claims on December 5 last in two cases where the government takes the same position as here, namely, that admiralty has jurisdiction; and that the issue is also raised in the appeal of American Eastern Corp. v. United States, D.C.S.D.N.Y., 133 F. Supp. 11, now on our appellate calendar. Seemingly also various other cases involving such claims for repayment of charter hire are pending. The question is obviously important; and clearly we have not until now received that full assistance of counsel which makes for good decisions, while our own researches, perhaps adequate for mere decision, have not covered all the latest ramifications of the problem. Counsel sometimes feel that the court unwisely goes beyond the arguments presented to conduct its own studies and reach its decision thus independently; but these cases are a warning to us, as well as to them, that such excursions are often quite vital to adequate adjudication.

Our conclusion therefore is again that the action was properly brought in admiralty, but that it must fail because of the running of the statute of limitations and also because of the release contained in the executed Plan of Arrangement. Hence we reaffirm our decision affirming the dismissal of the libel.

HAND, Circuit Judge (concurring in part and dissenting in part).

My mind has not changed as to any of the three questions that we discussed before. Regardless of how I might have decided the question as *res nova*, I should have followed United Transportation & Lighterage Co. v. New York & Baltimore Transportation Line, 185 F. 386, because, except for special circumstances, I should follow any precedent of this court that had not only remained unchallenged for so long, but had been twice expressly followed. My only reason for not doing so in this instance was that in Krauss Bros. Lumber Co. v. Dimon S. S. Corp., 290 U.S. 117, 54 S.Ct. 105, 78 L.Ed. 216, the Supreme Court appears to me to have put its decision squarely upon the theory that it is a breach of the contract of carriage for a carrier to demand and receive more than the stipulated freight, even though the payment is not made a condition upon delivery. Naturally, it is not for me to pass upon the

same, where the exaction is excessive; and Commercial Trust Co. v. United States Shipping Board Emergency Fleet Corp., 2 Cir., 48 F.2d 113, a common count for money had and received to trace a pledge on a maritime loan into third-party hands held cognizable only in admiralty. See also the many libels sustaining as of course libels for damages, contrary to the provisions of contracts or bills of lading which are rendered unenforceable by Acts of Congress, e. g., Knott v. Botany Worsted Mills, 179 U.S. 69, 77, 21 S.Ct. 30, 45 L.Ed. 90;

The Southwark, 191 U.S. 1, 16, 17, 24 S.Ct. 1, 48 L.Ed. 65; United States v. Atlantic Mut. Ins. Co., 343 U.S. 236, 72 S.Ct. 666, 96 L.Ed. 907, affirming United States v. Farr Sugar Corp., 2 Cir., 191 F.2d 370; Pan-Am Trade & Credit Corp. v. The Campfire, 2 Cir., 156 F.2d 603, certiorari denied 329 U.S. 774, 67 S.Ct. 194, 91 L.Ed. 666; and Balfour, Guthrie & Co. v. American-West African Line, 2 Cir., 136 F.2d 320, 322, certiorari denied Balfour, Guthrie & Co. v. The Zarembo, 320 U.S. 804, 64 S.Ct. 437, 88 L. Ed. 486.

correctness of that interpretation of such a contract.

However, I differ with my brothers in the change they are making in our decree. Strictly, we should not originally have "affirmed" the decree of the district court as we did, because it had been based upon the notion that the "arrangement" was a bar to the suit. Now that we have decided that the libel was filed too late, Judge Murphy never got jurisdiction over the claim at all; and our decision as to the effect of the arrangement is as little within our own jurisdiction as it was within his. Perhaps this was corrected by what was nevertheless an inconsistent statement: that the libel was to be "dismissed for lack of jurisdiction of the district court"; but, be that as it may, I do not agree that our decree should now be amended to determine what was the effect of the arrangement.